IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

EVELYN CINTRON                          :
                                        :
                                        :        CIVIL ACTION
        v.                              :
                                        :        NO. 19-4078
                                        :
CITY OF PHILADELPHIA, ET AL.            :

**MEMORANDUM**

**SURRICK, J.**                                              **MAY 19, 2020**

Presently before the Court is Defendants City of Philadelphia and Joseph Sullivan's Motion to Dismiss (ECF No. 6) and Defendant the Police Athletic League's Motion to Dismiss. (ECF No. 15.)  For the following reasons, Defendants' Motions will be granted in part and denied in part.

## I.      BACKGROUND

In this six-count Complaint, Plaintiff Evelyn Cintron asserts claims of employment discrimination on the basis of sex and national origin (Counts I, II, and V), employment retaliation for reporting race discrimination (Counts III and VI), and First Amendment retaliation and *Monell* claims pursuant to Section 1983 (Count IV).

### A.      Factual Background[1]

Defendant Joseph Sullivan is a white male.  (Compl. ¶¶ 7, 15, ECF No. 1.)  Sullivan's job title is Deputy Police Commissioner.  (*Id*. at ¶ 7.)  He is an employee and an alleged policymaker of Defendant City of Philadelphia ("the City"), the City's Police Department, and Defendant

---

[1] When considering a motion to dismiss, the Court must accept as true all factual allegations in the plaintiffs' complaint and construe the facts alleged in the light most favorable to the plaintiffs.  *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210-11 (3d Cir. 2009) (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 677 (2009)).

Philadelphia Police Athletic League ("PAL"). (*Id*. at ¶¶ 7, 10, 15.) PAL is a non-profit organization that functions as a unit and part of the City's Police Department. (*Id*. at ¶¶ 5-6.) PAL is a collaborative effort with the City's Police Department. (*Id*. at ¶ 15.) PAL's leadership consists predominately of white men, like Sullivan, who are also simultaneously members of the City's Police Department. (*Id*.)

Plaintiff is a 52-year-old Hispanic woman. (*Id*. at ¶ 3.) Plaintiff was the first Hispanic woman to hold the rank of Lieutenant in the City's Police Department. (*Id*. at ¶¶ 14, 17, 40.) In June of 2015, Police Commissioner Richard Ross chose Plaintiff to also serve as a Commanding Officer of PAL. (*Id*. at ¶¶ 14, 17.) Plaintiff's job duties included managing the policing unit, the City's police personnel, and PAL's day-to-day operations. (*Id*. at ¶ 19.) Initially, Plaintiff reported to Deputy Commissioner Myron Patterson. (*Id*. at ¶ 18.) Deputy Commissioner Patterson was generally supportive of Plaintiff's advocacy against discrimination. (*Id*. at ¶ 29.)

In March of 2018, Sullivan was assigned as Plaintiff's new supervisor. (*Id*. at ¶¶ 16, 20.) Thereafter, Plaintiff advised Sullivan of numerous concerns that she had about race discrimination at PAL. She reported disparities in funding between PAL centers that serviced predominately black and Hispanic youth and PAL centers that serviced predominately white youth. (*Id*. at ¶ 21.) Plaintiff also reported violations of departmental policies, a lack of supervision of subordinate staff, and unfair treatment of minority personnel that violated local, state, and federal laws. (*Id*. at ¶¶ 22-23.) Plaintiff complained to Sullivan about unsafe conditions at PAL centers that serviced predominately minority youth. (*Id*. at ¶ 25.) She also complained to Sullivan about disparities in the distribution of charitable gifts among PAL youth members and PAL unit police officers. (*Id*. at ¶ 26.) She was concerned that Sullivan had directed resources to an Irish PAL center instead of to a minority PAL center. (*Id*. at ¶ 27.)

Plaintiff reported these concerns to Deputy Commissioner Patterson as well.  (*Id*. at ¶ 28.)
In response, Deputy Commissioner Patterson told Plaintiff to deal directly with her supervisor.
(*Id*. at ¶ 29.)  Deputy Commissioner Patterson took no other action.  (*Id*.)  Plaintiff then reported
her concerns to the City's Equal Employment Opportunity Office ("the City's EEOO").  (*Id*. at ¶
30.)

Sullivan ordered Plaintiff not to report any of her concerns to Deputy Commissioner
Patterson or Commissioner Ross.  (*Id*. at ¶ 31.)  Sullivan also made allegedly false accusations
about Plaintiff's work performance and besmirched her reputation.  (*Id*. at ¶ 32.)  Sullivan
convinced other PAL leaders to isolate Plaintiff, exclude her from meetings, and treat her with
hostility.  (*Id*. at ¶ 33.)

Plaintiff found her work conditions to be increasingly stressful, hostile, and harmful.  (*Id*.
at ¶ 34.)  She began experiencing panic attacks and severe insomnia.  (*Id*. at ¶ 35.)  She sought
medical attention.  (*Id*.)  She was diagnosed with post-traumatic stress disorder and acute
depression due to work-related stress.  (*Id*. at ¶ 36.)  She was prescribed medication.  (*Id*.)
Plaintiff took medical leave from work and sought long-term psychiatric care and counseling.
(*Id*. at ¶¶ 37-38.)  Plaintiff's doctor would not permit Plaintiff to return to work.  (*Id*. at ¶ 39.)
Plaintiff retired.  (*Id*.)  She had served the City for 27 years.  (*Id*. at ¶ 39.)  For 20 of those years,
she had served the City's Police Department.  (*Id*.)

**B.    Procedural History**

On May 22, 2019, Plaintiff filed sex and national origin discrimination and retaliation
charges against Defendants with the District Office of the Equal Employment Opportunity
Commission ("the District EEOC").  (*Id*. at ¶ 12.)  On June 10, 2019, the U.S. Department of
Justice issued Plaintiff a Notice of Right to Sue within 90 days.  (*Id*. at ¶ 13.)  On September 6,

2019, Plaintiff filed a six-count Complaint in this Court.[2]  Plaintiff contends that she was subjected to discriminatory and retaliatory treatment by the City, PAL, and Sullivan because she is a Hispanic woman and because she voiced concerns about alleged race discrimination at PAL.

On November 8, 2019, the City and Sullivan filed a Motion to Dismiss.  (City-Sullivan Mot. to Dismiss, ECF No. 6.)  On December 2, 2019, Plaintiff filed a Response in Opposition. (Resp. to City-Sullivan Mot. to Dismiss, ECF No. 9.)  On February 6, 2020, PAL filed a Motion to Dismiss.  (PAL Mot. to Dismiss, ECF No. 15.)  On March 5, 2020, Plaintiff filed a Response in Opposition.  (Resp. to PAL Mot. to Dismiss, ECF No. 18.)  In both Responses, Plaintiff requested leave to file an Amended Complaint.  (Resp. to City-Sullivan Mot. to Dismiss 2, 4, 18; Resp. to PAL Mot. to Dismiss 2, 17.)

## II.    LEGAL STANDARD

Under Federal Rule of Civil Procedure 8(a)(2), "[a] pleading that states a claim for relief must contain a short and plain statement of the claim showing that the pleader is entitled to relief."  Rule 12(b)(6) provides for the dismissal of a complaint, in whole or in part, for failure to state a claim upon which relief can be granted.  A motion under Rule 12(b)(6) tests the sufficiency of the complaint against the pleading requirements of Rule 8(a).  "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Iqbal*, 556 U.S. at 678 (*quoting Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).

A claim is plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Id*.  A

---

[2] Plaintiff attached the Notice of Right to Sue within 90 days to the Complaint.  (*See* Compl. Ex. A.)

complaint that merely alleges entitlement to relief, without alleging facts that show entitlement, must be dismissed.  *See Fowler*, 578 F.3d at 211.  Courts need not accept "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements. . . ."  *Iqbal*, 556 U.S. at 678.  "While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations."  *Id*. at 679.  This "'does not impose a probability requirement at the pleading stage,' but instead 'simply calls for enough facts to raise a reasonable expectation that discovery will reveal evidence of' the necessary element."  *Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 234 (3d Cir. 2008) (quoting *Twombly*, 550 U.S. at 556).

Evaluation of a Rule 12(b)(6) motion entails a three-step analysis:  (1) "[the district court] must tak[e] note of the elements [the] plaintiff must plead to state a claim"; (2) "it should identify allegations that, 'because they are no more than conclusions, are not entitled to the assumption of truth'"; and, (3) "[w]hen there are well-pleaded factual allegations, [the] court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief."  *Connelly v. Lane Constr. Corp*., 809 F.3d 780, 787 (3d Cir. 2016) (quoting *Iqbal*, 556 U.S. at 675, 679).  The plausibility determination is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense."  *Iqbal*, 556 U.S. at 679.

## III.   DISCUSSION

Defendants' Motions raise various arguments seeking dismissal of certain claims under Rule 12(b)(6).  Plaintiff opposes both Motions and, in the alternative, seeks leave to amend the Complaint.  We address each Motion and the arguments raised therein separately.

A.      **The City and Sullivan's Motion to Dismiss**

      1.      **First Amendment Retaliation Claim against Sullivan under
             Section 1983 (Count IV)**

Count Four asserts a First Amendment retaliation claim against Sullivan. "Section 1983 is the vehicle public employees use to bring claims that their First and Fourteenth Amendment rights have been violated." *Flora v. Cnty. of Luzerne*, 776 F.3d 169, 173 n.5 (3d Cir. 2015) (citing *Collins v. City of Harker Heights, Tex.*, 503 U.S. 115, 120 (1992)). "To establish a First Amendment retaliation claim, a public employee must show that his speech is protected by the First Amendment and that the speech was a substantial or motivating factor in what is alleged to be the employer's retaliatory action." *Id*. at 174. "A public employee's statement is protected by the First Amendment when: (1) in making it, the employee spoke as a citizen, (2) the statement involved a matter of public concern, and (3) the government employer did not have an adequate justification for treating the employee differently from any other member of the general public as a result of the statement he made." *Id.* at 175 (internal citations and quotation marks omitted).

Sullivan only disputes whether Plaintiff spoke as a citizen when she complained about alleged race discrimination at PAL. In evaluating whether a complaint alleges that a public employee spoke as a citizen, "the proper framing of the question is whether the [speech] [was] within [the public employee's] ordinary job duties . . ., not whether [the speech] concerned or [was] related to those duties." *Id.* at 179 (citing *Lane v. Franks*, 573 U.S. 228, 238 (2014)). The court must assess whether the speech was "part of the work [the public employee] was paid to perform on an ordinary basis." *Id.* at 180; *see also Javitz v. Cnty. of Luzerne*, 940 F.3d 858, 863-65 (3d Cir. 2019) (collecting cases) ("[O]ur threshold inquiry is whether [the plaintiff] spoke as a citizen or a public employee, and as such, whether her speech was either ordinarily within the scope of her duties, or simply relating to those duties.") (internal citations and quotation marks

omitted); *Garcetti v. Ceballos*, 547 U.S. 410, 424 (2006) ("We reject . . . the suggestion that employers can restrict employees' rights by creating excessively broad job descriptions.").

Sullivan argues that Plaintiff's complaints were within the scope of her ordinary job duties because she was reporting "up the chain of command." (City-Sullivan Mot. to Dismiss 4-6.) Reporting "up the chain of command" may generally be within the scope of an employee's ordinary job duties. *See*, *e.g.*, *Foraker v. Chaffinch*, 501 F.3d 231, 241 (3d Cir. 2007), *abrogated on other grounds by Borough of Duryea v. Guarnieri*, 564 U.S. 379 (2011) ("Price and Warren were expected, pursuant to their job duties, to report problems concerning the operations at the range up the chain of command."). However, this is not always the case. *See*, *e.g.*, *Williams v. City of Allentown*, No. 19-1444, 2020 U.S. App. LEXIS 7587, at *8-9 (3d Cir. Mar. 11, 2020) ("If we construed Williams's official duties to include all speech related to the City's rules and policies, we would be permitting the type of 'excessively broad job descriptions' that the Supreme Court cautioned against in *Garcetti*."). Plaintiff alleges only that her job duties included managing the policing unit, the City's police personnel, and PAL's day-to-day operations. When we examine the content of Plaintiff's complaints and to whom she reported those complaints, it is not clear, based on the factual allegations contained in the Complaint, that it was ordinarily within the scope of the job duties Plaintiff was paid to perform as a PAL Commanding Officer or as a Lieutenant of the City's Police Department to report incidents of race discrimination to her supervisor, her former supervisor, and the City's EEOO. *See Javitz*, 940 F.3d at 865 ("Who Javitz spoke to, what she spoke about, and why she spoke at all each fall outside the scope of her primary job duties and evidence citizen speech.").

There is a factual dispute regarding Plaintiff's job duties. On a 12(b)(6) motion, this Court may not settle that factual dispute. *See Flora*, 776 F.3d at 175-76 ("Here, there was a

factual dispute as to whether [the plaintiff's] job duties encompassed making the statements at issue.  Rather than accepting the facts alleged in the complaint as true, the District Court in effect made factual determinations as to the scope of [the plaintiff's] duties.  In doing so, it erred.").

Based on the pleadings, we can infer that Plaintiff spoke as a citizen when she complained about race discrimination at PAL to Sullivan, Patterson, and the City's EEOO. Therefore, the City and Sullivan's Motion to Dismiss at this juncture will be denied as to Plaintiff's First Amendment retaliation claim against Sullivan.  *See also id.* at 180-81 ("Accordingly, we conclude that [the plaintiff's] complaint contains sufficient allegations that his ordinary job duties did not include filing the funding suit or reporting the expungement issue and the pleading should therefore have survived the motion to dismiss. Whether [plaintiff's] ordinary job duties actually encompassed such tasks is an issue that may need to be resolved later in the case.").

### 2.    The *Monell* Claim against the City for First Amendment Retaliation (Count IV)

Count Four asserts a *Monell* claim against the City.  The City argues that Plaintiff's *Monell* claim fails because Plaintiff has not:  (1) proven a constitutional violation and (2) identified a viable theory of municipal liability.  We need not further address the constitutional violation issue since we have already determined that Plaintiff has alleged a plausible First Amendment retaliation claim against Sullivan.

Although Count Four of the Complaint is not a model of clarity, Plaintiff appears to put forth three theories of municipal liability:  (1) the City is strictly liable for Sullivan's actions; (2) the City is liable for a failure to train or supervise Sullivan not to retaliate or discriminate; and (3) the City is liable because its policy, custom, or practice caused the constitutional violation. We address each theory of municipal liability in turn.

Plaintiff alleges that the City is strictly liable for the actions of Sullivan.  This is simply incorrect.  Municipal liability under *Monell* cannot rest on a theory of *respondeat superior*.  *Bd. of the Cnty. Comm'rs v. Brown*, 520 U.S. 397, 403 (1997).  *See also Hammon v. Kennett Twp*., No. 17-1586, 2017 U.S. Dist. LEXIS 200519, at *10 (E.D. Pa. Dec. 6, 2017) ("[The plaintiff's] reading of § 1983 would transform it from a statute that requires an intentional deprivation of rights to a strict liability statute.  Such an action would also fly in the face of the Supreme Court's rejection of *respondeat superior* liability in the § 1983 context.") (citing *Monell v. Dep't of Soc. Servs*., 436 U.S. 658, 691 (1978); *Daniels v. Williams*, 474 U.S. 327, 330-32 (1986)).  Accordingly, Plaintiff has not plausibly alleged municipal liability premised on strict liability.

Plaintiff also alleges that the City failed to adequately train and supervise Sullivan not to retaliate or discriminate.  The City's failure to adequately train or supervise Sullivan can subject it to Section 1983 liability where the failure "amounts to deliberate indifference to the rights of persons with whom [Sullivan] come[s] into contact."  *Brown v. Muhlenberg Twp*., 269 F.3d 205, 215 (3d Cir. 2001) (quoting *City of Canton v. Harris*, 489 U.S. 378, 388 (1989)).  Deliberate indifference can ordinarily be shown where the failure "has caused a pattern of violations."  *Berg v. Cnty. of Allegheny*, 219 F.3d 261, 276 (3d Cir. 2000).  However, when there is no pattern of violations, a plaintiff must establish that "the need for more or different training is so obvious, and the inadequacy so likely to result in the violation of constitutional rights, that the policymakers of the city can reasonably be said to have been deliberately indifferent to the need."  *City of Canton*, 489 U.S. at 390.

Although Plaintiff's Complaint does not allege a pattern of violations, it is plausible that the need for training on retaliation and discrimination was obvious.  Some courts in this Circuit have permitted failure to train claims with similar allegations to survive a motion to dismiss.

*See*, *e.g.*, *Savokinas v. Borough of Avoca*, No. 07-2311, 2008 U.S. Dist. LEXIS 49938, at \*18-19 (M.D. Pa. June 27, 2008) (concluding that the plaintiff had plausibly alleged a failure to train claim where the plaintiff had alleged that "the Borough knew that its employee Lukowich, who had recently been the subject of a complaint made to the Borough by [the plaintiff], was confronting a situation in which he had the opportunity to harass [the plaintiff] and was mishandling that situation."); *Village of Throop v. Viola*, No. 06-1930, 2007 U.S. Dist. LEXIS 56181, at \*12 (M.D. Pa. Aug. 2, 2007) (concluding that the plaintiff had plausibly alleged a failure to train claim premised on a municipality's failure to train officers not to retaliate against employees who invoke their constitutional rights); *Angelella v. Pittston Township*, No. 06-0120, 2007 U.S. Dist. LEXIS 66968, at \*16 (M.D. Pa. Sept. 11, 2007) (concluding that the plaintiff had plausibly alleged a failure to train claim premised on the municipality's failure to train "its employees and agents not to retaliate against employees who petition the government for redress.").  We will permit Plaintiff's failure to train claim against the City to survive at this juncture.  If discovery reveals evidence that the City did in fact train its officers on how they should or should not respond to complaints of race discrimination, then the City can raise that argument on summary judgment.

Plaintiff also alleges a *Monell* claim against the City under the theory that its policy, custom, or practice caused a constitutional violation.  Under this theory of liability, a plaintiff must show that the municipality itself, through the implementation of a policy, custom, or practice, caused the constitutional violation.  *Beck v. City of Pittsburgh*, 89 F.3d 966, 971 (3d Cir. 1996).  The Complaint does not identify a City policy, custom, or practice.  *See McTernan v. City of York*, 564 F.3d 636, 658 (3d Cir. 2009) ("To satisfy the pleading standard, [the plaintiff] must identify a custom or policy, and specify what exactly that custom or policy was.").  Plaintiff

merely alleges that she raised concerns about discrimination and suffered consequences as a result.  She does not allege that what she suffered was the result of any City policy, custom, or practice.  Accordingly, Plaintiff has not plausibly alleged a *Monell* claim under this theory.

Based upon the foregoing, the City and Sullivan's Motion to Dismiss will be granted as to Plaintiff's *Monell* claims against the City premised on strict liability and a policy, custom, or practice.  Plaintiff's *Monell* claim against the City premised on a failure to train survives.

### 3. The Title VII Retaliation Claim against the City (Count III)

Count Three of the Complaint asserts a retaliation claim under Title VII against the City.[3] A Title VII retaliation claim consists of the following three elements:  "(1) [the plaintiff] engaged in protected activity; (2) [the plaintiff] suffered an adverse employment action; and (3) there was a causal connection between the protected activity and the adverse employment action."  *Groeber v. Friedman & Schuman, P.C.*, 555 F. App'x 133, 135-36 (3d Cir. 2014).  An employee alleging retaliation must show that the employer's retaliatory motive was the but-for cause of the adverse employment action, not just a motivating factor.  *See Univ. of Tex. Sw. Med. Ctr. v. Nassar*, 570 U.S. 338, 362 (2013).

---

[3] With regard to Count Three—Title VII, 42 U.S.C. § 2000(e)-3(a)) violation against the City—Plaintiff alleges that she was retaliated against in her employment because of her complaints about race discrimination.  42 U.S.C. § 2000(e)-3(a) provides:

> It shall be an unlawful employment practice for an employer to discriminate against any of his employees . . . because he has opposed any practice made an unlawful employment practice by this title [42 U.S.C. §§ 2000e–2000e-17], or because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this title [42 U.S.C. §§ 2000e–2000e-17].

42 U.S.C. § 2000(e)-3(a).

The City argues that Plaintiff's Title VII retaliation claim fails because she failed to identify a causal nexus between protected activity—her complaints to Sullivan, Patterson, and the City's EEOO about race discrimination at PAL—and subsequent retaliatory action—Sullivan's allegedly false accusations about Plaintiff's work performance, besmirching of her reputation, and convincing others to exclude her from meetings and treat her with hostility that precipitated Plaintiff's retirement.  The City generally finds fault with the Complaint's failure to plead exact or approximate dates for when the protected activity and retaliation allegedly took place.  Plaintiff responds that the totality of the factual allegations in the Complaint allows for a reasonable inference that there was a causal link between her complaints and the retaliation.  We agree.

"Indeed, temporal proximity can be probative of a causal connection in retaliation cases. . . . But the mere fact that adverse employment action occurs after a complaint will ordinarily be insufficient to satisfy the plaintiff's burden of demonstrating a causal link between the two events."  *Groeber*, 555 F. App'x at 136 (internal citations and quotation marks omitted). "[W]here there is a lack of temporal proximity, circumstantial evidence of a pattern of antagonism following the protected conduct can also give rise to the inference" that the protected activity was the but-for cause for the adverse employment action.  *Kachmar v. Sungard Data Sys.*, 109 F.3d 173, 177 (3d Cir. 1997) (internal citations and quotation marks omitted). Temporal proximity and a pattern of antagonism "are not the exclusive ways to show causation, as the proffered evidence, looked at as a whole, may suffice to raise the inference."  *Id*.

Plaintiff has plausibly alleged "a pattern of antagonism" sufficient to give rise to the inference that she was retaliated against because she had raised concerns about race

discrimination at PAL.[4]  *See id.*  After voicing her concerns, her reputation was besmirched, allegedly false accusations of poor work performance were leveled against her, she was excluded from meetings, and other members of PAL leadership treated her with hostility.  Moreover, there is no other basis contained in the factual allegations of the Complaint that would account for Plaintiff's treatment.  Prior to raising her concerns of race discrimination, Plaintiff's work history appears unblemished and even commendable.  Plaintiff had worked for the City for 27 years.  For 20 of those years, she had worked for the City's Police Department and had risen through the ranks to be the first Hispanic woman to hold the title of Lieutenant.  In 2015, Plaintiff was honored to be appointed Commanding Officer of PAL.  Plaintiff held that position for three years under the supervision of Deputy Commissioner Patterson, who was generally supportive of her advocacy efforts.  Sometime after March of 2018 when Sullivan became her new supervisor, Plaintiff voiced her concerns about race discrimination to Sullivan, Patterson, and the City's EEOO.  Thereafter, leading up to her May 2019 filing of claims with the District EEOC, Plaintiff was excluded from meetings, allegedly false accusations of poor work performance were leveled against her, her reputation was besmirched, and she was treated with hostility.  Further, Sullivan's preceding order to Plaintiff to not voice her concerns to Patterson or Ross contributes to an inference of retaliatory motive.  At this juncture, absent any other reason for this drastic change in treatment, it is reasonable to infer that Plaintiff's concerns about alleged race discrimination were the but-for cause of the retaliatory conduct.  The City and Sullivan's Motion to Dismiss the Title VII retaliation claim against the City at this juncture will be denied.

---

[4] Because Plaintiff failed to plead any dates of when she made her complaints and when Sullivan retaliated against her, we were unable to evaluate whether temporal proximity showed plausible causation here.

B.      PAL's Motion to Dismiss

      1.      Title VII & PHRA Sex and National Origin Discrimination Claims
         against PAL (Counts I, II, & V)

Counts One, Two, and Five of the Complaint assert sex and national origin

discrimination claims under Title VII and the PHRA against PAL.[5]

_____

[5] With regard to Count One—Title VII, 42 U.S.C. § 2000e-2(a)(1) violation against
PAL—Plaintiff alleges that in her employment she was discriminated against on the basis of her
sex and national origin.  42 U.S.C. 2000e-2(a)(1) provides:

    (a) Employer practices.  It shall be an unlawful employment practice for an
    employer—
    (1) to fail or refuse to hire or to discharge any individual, or otherwise to
    discriminate against any individual with respect to his compensation, terms,
    conditions, or privileges of employment, because of such individual's race, color,
    religion, sex, or national origin.

42 U.S.C. § 2000e-2(a)(1).
    With regard to Count Two—Title VII, 42 U.S.C. § 2000e-2(a)(2) violation against
PAL—Plaintiff alleges that she was deprived of employment opportunities on the basis of her
sex and national origin.  42 U.S.C. § 2000e-2(a)(2) provides:

    (a) Employer practices.  It shall be an unlawful employment practice for an
    employer— . . .
    (2) to limit, segregate, or classify his employees or applicants for employment in
    any way which would deprive or tend to deprive any individual of employment
    opportunities or otherwise adversely affect his status as an employee, because of
    such individual's race, color, religion, sex, or national origin.

42 U.S.C. § 2000e-2(a)(2).  This section of Title VII is associated with both disparate impact and
disparate treatment claims.  *See Byrd v. City of Phila.*, No. 12-4520, 2013 U.S. Dist. LEXIS
151321, at *9 (E.D. Pa. Oct. 22, 2013).  PAL and Plaintiff addressed Count Two as only a
disparate treatment claim in their briefs.  (PAL Mot. to Dismiss 5 n.2; Response PAL Mot. to
Dismiss 7-8.)  Additionally, although Plaintiff mentions that she was subjected to a "hostile work
environment" under the section in her Complaint titled "Operative Allegations," (Compl. ¶ 39.),
she does not explicitly plead a Title VII Hostile Work Environment claim.  As such, we do not
address a Title VII Hostile Work Environment claim at this juncture.
    With regard to Count Five—PHRA, 43 Pa. Cons. Stat. § 955(a) violation against PAL—
Plaintiff alleges that although she was "the best able and most competent to perform her
services,"  she was discriminated against in terms of compensation, hire, tenure, and conditions
of employment on the basis of sex and national origin. 43 Pa. Cons. Stat. § 955(a) provides:

PAL seeks to dismiss these claims.  We address Plaintiff's Title VII and PHRA sex and national origin discrimination claims together because the analysis "is identical, as Pennsylvania courts have construed the protections of the two acts interchangeably."  *Huston v. Procter & Gamble Paper Prods. Corp.*, 568 F.3d 100, 104 n.2 (3d Cir. 2009) (internal quotation marks and citation omitted).  "To establish a *prima facie* case of employment discrimination on the basis of [sex and/or national origin], a plaintiff must show that: (1) she is a member of a protected class; (2) she was qualified for the position; (3) she suffered an adverse employment action; and (4) the adverse employment action was made under circumstances that give rise to an inference of unlawful discrimination."  *Groeber*, 555 F. App'x at 135 (internal citation omitted).

Plaintiff asserts that her sex and her national origin, Hispanic, were motivating factors behind the treatment she was subjected to in her employment.[6]  However, the Complaint does not plausibly allege that this treatment was because Plaintiff is Hispanic or a woman or both.  Rather, her Complaint only plausibly alleges that this treatment was because Plaintiff had raised concerns about race discrimination at PAL.  The only factual allegations that even touch on sex

---

It shall be an unlawful discriminatory practice . . . [f]or any employer because of the . . . sex [or] national origin . . . of any individual or independent contractor, to refuse to hire or employ or contract with, or to bar or to discharge from employment such individual or independent contractor, or to otherwise discriminate against such individual or independent contractor with respect to compensation, hire, tenure, terms, conditions or privileges of employment or contract, if the individual or independent contractor is the best able and most competent to perform the services required.

43 Pa. Cons. Stat. § 955(a).

[6] National origin "refers to the country where a person was born, or, more broadly, the country from which his or her ancestors came."  *Espinoza v. Farah Mfg. Co.*, 414 U.S. 86, 88 (1973).  Under Title VII, Hispanic ethnicity may give rise to discrimination claims on the basis of either race or national origin.  *See Vill. of Freeport v. Barrella*, 814 F.3d 594, 607 (2d Cir. 2016).

and national origin are that Plaintiff is a Hispanic woman, Sullivan is a white man, and that

PAL's leadership consists primarily of white men.  These factual allegations are not enough for

these claims to satisfy Rule 12(b)(6).[7]  PAL's Motion to Dismiss Plaintiff's Title VII and PHRA

sex and national origin discrimination claims will be granted.  Plaintiff's Title VII and PHRA sex

and national origin discrimination claims against PAL will be dismissed.[8]

### 2.    Title VII & PHRA Retaliation Claims against PAL (Counts III & VI)

Counts Three and Six of the Complaint assert retaliation claims under Title VII and the

PHRA against PAL.[9]  PAL seeks to dismiss these claims.  We address Plaintiff's Title VII and

---

[7] PAL also argues that Plaintiff failed to allege an adverse employment action. Constructive discharge is an adverse employment action.  *See Hill v. Borough of Kutztown*, 455 F.3d 225, 247 n.32 (3d Cir. 2006).  Constructive discharge occurs when an employer "'knowingly permitted' intolerable [working] conditions such that a reasonable person would feel compelled to resign."  *See Connors v. Chrysler Fin. Corp.*, 160 F.3d 971, 975 (3d Cir. 1998) (quoting *Gray v. York Newspapers, Inc.*, 957 F.2d 1070, 1082 (3d Cir. 1992)).  Factors to consider include whether: "(1) [the plaintiff] was threatened with discharge; (2) she was encouraged to resign; (3) she was demoted or suffered a reduction in pay or benefits; (4) she was involuntarily transferred to a less desirable position; (5) her job responsibilities were altered; and (6) she began receiving unsatisfactory job evaluations."  *Seeney v. Elwyn, Inc.*, 409 F. App'x 570, 573 (3d Cir. 2011).  Here, Plaintiff has alleged, *inter alia*, that Sullivan made allegedly false accusations about Plaintiff's work performance and besmirched her reputation.  Although Plaintiff has not alleged sufficient factual allegations for causation, she has alleged sufficient factual allegations for the adverse employment action of constructive discharge.

[8] It does not appear that the City sought to dismiss these claims.  However, because we find that there are insufficient allegations to support these claims, we will also dismiss these claims as deficient against the City.

[9] With regard to Count Three—Title VII, 42 U.S.C. § 2000(e)-3(a)) violation against PAL—Plaintiff alleges that she was retaliated against in her employment because of her complaints about race discrimination.  42 U.S.C. § 2000(e)-3(a) provides:

> It shall be an unlawful employment practice for an employer to discriminate against any of his employees . . . because he has opposed any practice made an unlawful employment practice by this title [42 U.S.C. §§ 2000e–2000e-17], or because he has made a charge, testified, assisted, or participated in any manner in an

PHRA retaliation claims together.  *See Huston*, 568 F.3d at 104 n.2.  A Title VII retaliation claim consists of the following three elements:  "(1) [the plaintiff] engaged in protected activity; (2) [the plaintiff] suffered an adverse employment action; and (3) there was a causal connection between the protected activity and the adverse employment action."  *Groeber*, 555 F. App'x at 135-36.

PAL argues that Plaintiff's Title VII and PHRA retaliation claims fail because she has not identified a causal nexus between the protected activity and the subsequent retaliatory action. We found this argument unavailing in our discussion of the City and Sullivan's Motion to Dismiss, and PAL has not presented any additional support to alter the outcome of our analysis.

PAL also argues that Plaintiff has failed to allege an adverse employment action.  The Supreme Court has held that "[t]he scope of the antiretaliation provision [of Title VII] extends beyond workplace-related or employment-related retaliatory acts and harm" and is not limited to "ultimate employment decisions," such as "hiring, granting leave, discharging, promoting, and compensating."  *Burlington N. & Santa Fe Ry. v. White*, 548 U.S. 53, 60, 67 (2006) (internal

---

investigation, proceeding, or hearing under this title [42 U.S.C. §§ 2000e–2000e-17].

42 U.S.C. § 2000(e)-3(a).
    With regard to Count Six—PHRA, 43 Pa. Cons. Stat. § 955(d) violation against PAL—Plaintiff alleges that she was retaliated against because she opposed discriminatory practices prohibited by 43 Pa. Cons. Stat. 955.  43 Pa. Cons. Stat. § 955(d) provides:

    It shall be an unlawful discriminatory practice . . . [f]or any person, employer, employment agency or labor organization to discriminate in any manner against any individual because such individual has opposed any practice forbidden by this act, or because such individual has made a charge, testified or assisted, in any manner, in any investigation, proceeding or hearing under this act.

43 Pa. Cons. Stat. § 955(d).

citations and quotation marks omitted).  Thus, "a plaintiff must show that a reasonable employee would have found the challenged action materially adverse, which in this context means it well might have dissuaded a reasonable worker from making or supporting a charge of discrimination."  *Id*. at 68 (internal citations and quotation marks omitted).  The antiretaliation provision does not protect individuals from trivial adverse employment actions, such as "normally petty slights, minor annoyances, and simple lack of good manners."  *Id*.  The Supreme Court advises that "[c]ontext matters" because "[t]he real social impact of workplace behavior often depends on a constellation of surrounding circumstances, expectations, and relationships which are not fully captured by a simple recitation of the words used or the physical acts performed."  *Id*. at 69 (internal citations and quotation marks omitted).

Accepting all factual allegations contained in the Complaint as true and in the light most favorable to Plaintiff, Plaintiff has plausibly alleged a materially adverse employment action. The leveling of allegedly false accusations of poor work performance, the besmirched reputation, the hostile treatment by other members of PAL leadership, and the exclusion from meetings could deter a reasonable employee from speaking out about unlawful race discrimination.[10] PAL's Motion to Dismiss Plaintiff's Title VII and PHRA retaliation claims against PAL at this juncture will be denied.

---

[10] PAL also argues that "Plaintiff alleges only that Sullivan encouraged others to isolate and exclude Plaintiff, and treat her poorly.  There are no allegations that any other employee actually did that, or that the actions those employees took amounted to an adverse employment action."  (PAL Mot. to Dismiss. 7.)  PAL also argues that "Plaintiff fails to identify the authority of the employees who allegedly acted against her, and therefore fails to allege that those employees had the ability and authority to subject Plaintiff to an adverse employment action." (*Id*.)  PAL is mistaken.  In the Complaint, Plaintiff alleges that Sullivan "urged and *convinced other members of Defendant PAL's leadership*" to exclude Plaintiff from meetings, isolate her, and treat her with hostility.  (Compl. ¶ 33 (emphasis added.))  In our analysis under Rule 12(b)(6), we interpret the word "convinced" in this context to imply that Sullivan succeeded.

### 3.    First Amendment Retaliation Claim against PAL (Count IV)

Count Four asserts a First Amendment retaliation claim against PAL.  PAL argues that

Plaintiff's speech was not protected by the First Amendment because Plaintiff did not speak as a

citizen.  We found this argument unavailing when we addressed the City and Sullivan's Motion

to Dismiss, and PAL has not presented any additional support to alter the outcome of our

analysis.  Accordingly, PAL's Motion to Dismiss Plaintiff's First Amendment retaliation claim

against PAL at this juncture will be denied.

### 4.    Section 1983 Claims against PAL (Count IV)

Count Four asserts Section 1983 claims against PAL.  PAL argues that these claims fail

because Plaintiff has not sufficiently alleged that PAL was acting under color of state law.  We

disagree.

To establish a Section 1983 violation, a plaintiff must demonstrate that (1) the defendant

deprived the plaintiff of a right secured by the Constitution or the laws of the United States; and

(2) the defendant was acting under color of state law.  *Kaucher v. Cnty. of Bucks*, 455 F.3d 418,

423 (3d Cir. 2006).  Acting under color of state law "requires that one liable under § 1983 have

exercised power possessed by virtue of state law and made possible only because the wrongdoer

is clothed with the authority of state law."  *Harvey v. Plains Twp. Police Dep't*, 635 F.3d 606,

609 (3d Cir. 2011).  "A private action is not converted into one under color of state law merely

by some tenuous connection to state action.  The issue is not whether the state was involved in

some way in the relevant events, but whether the action taken can be fairly attributed to the state

itself."  *Groman v. Twp. of Manalapan*, 47 F.3d 628, 638 (3d Cir. 1995).

Plaintiff's Complaint alleges that although PAL is a non-profit organization, it functions as a unit and part of the City's Police Department.  *See*, *e.g.*, *Bal v. Police Ath. League, Inc*., No. 98-9115, 2002 U.S. Dist. LEXIS 8671, at *9 (S.D.N.Y. May 15, 2002) (holding that although a New York City PAL was a "non-profit organization," the plaintiff had plausibly alleged that this PAL was acting under color of state law because the complaint alleged that this PAL was, *inter alia*, "under the control of the Police Department of the City of New York and other governmental agencies" and "[i]t promotes itself as a part of the Police Department of the City of New York.").

The Complaint also alleges that PAL is a collaborative effort with the City's Police Department and that PAL's leaders are also simultaneously members of the City's Police Department.  Moreover, the Complaint alleges that Sullivan, while Deputy Commissioner of the City's Police Department, convinced PAL's leaders to exclude Plaintiff and treat her with hostility.  *Compare Talbert v. Sembrot*, No. 18-2270, 2018 U.S. Dist. LEXIS 167424, at *6 (E.D. Pa. Sep. 28, 2018) (concluding that the plaintiff had not plausibly alleged that the private party was a state actor where complaint had not alleged a "pre-arranged plan or collaborative relationship" with the state) *with Watson v. Haverford Twp. Police Dep't*, No. 10-6731, 2011 U.S. Dist. LEXIS 60858, at *11 (E.D. Pa. June 6, 2011) (finding that the plaintiff had plausibly alleged that the private party was a state actor where complaint alleged a "connection between the private party and state actor from which the court could infer improper influence or collaboration").

Although more factual content would be helpful, these allegations, construed as true, and in the light most favorable to Plaintiff, are sufficient to plausibly allege that PAL was acting

under color of state law.  PAL's Motion to Dismiss the Section 1983 claims against PAL at this juncture will be denied.[11]

### C.    Leave to Amend

In Plaintiff's Responses to both Motions to Dismiss, Plaintiff requested leave to amend the Complaint.  Defendants did not respond to this request.

The Federal Rules of Civil Procedure advise that leave to amend shall be "freely give[n] . . . when justice so requires."  Fed. R. Civ. P. 15(a)(2).  "Among the grounds that could justify a denial of leave to amend are undue delay, bad faith, dilatory motive, prejudice, and futility."  *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1434 (3d Cir. 1997).  As it would not be entirely futile and there is no appearance of undue delay, bad faith, dilatory motive, or prejudice, Plaintiff will be permitted to amend the Complaint.  In an Amended Complaint, Plaintiff may plead more supporting factual matter and may clarify the claims she is pursuing.

## IV.    CONCLUSION

For the foregoing reasons, Defendants' Motions to Dismiss will be granted in part and denied in part.  Plaintiff will be permitted to amend the Complaint.

An appropriate Order follows.

**BY THE COURT:**


*/s/R. Barclay Surrick*
**R. BARCLAY SURRICK, J.**

---

[11] Unlike the City, PAL did not argue that Plaintiff failed to plead a viable theory of municipal liability.