**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

|  |  |  |
|---|---|---|
| | : | |
| EVELYN CINTRON, | : | |
| Plaintiff, | : | |
| | : | Case No. 19-04078-RBS |
| v. | : | |
| | : | |
| CITY OF PHILADELPHIA, et al, | : | |
| Defendants. | : | |
| | : | |
| | : | |

---

**MEMORANDUM OF LAW OF DEFENDANT**
**THE POLICE ATHLETIC LEAGUE**
**IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT**

---

## **TABLE OF CONTENTS**

**TABLE OF AUTHORITIES** ................................................................................................... iii

**I.    INTRODUCTION** ............................................................................................................ 1

**II.    STATEMENT OF UNDISPUTED FACTS** .................................................................. 1

   **A.    Defendant The Police Athletic League** ............................................................... 1

   **B.    The City's PAL Unit** ............................................................................................. 2

   **C.    Distinction of and Separation between PAL and the City** ................................. 3

   **D.    Evelyn Cintron** ...................................................................................................... 5

      1.    Cintron expresses concern regarding the Wissinoming PAL Center ............................ 6

      2.    Cintron's actions result in an Internal Affairs investigation .............................. 7

      3.    Cintron takes a Medical Leave of Absence and elects not to return ............................... 8

      4.    Cintron files a Charge of Discrimination with the Equal Employment Opportunity Commission. .......................................................................................................... 9

**III.    ARGUMENT** ............................................................................................................... 10

   **A.    Standard of Review** ............................................................................................. 10

   **B.    Argument** ............................................................................................................. 12

      1.    Plaintiff failed to administratively exhaust her claims against PAL and her Title VII and PHRA claims should be dismissed. ........................................................ 12

      2.    Cintron's Title VII and PHRA claims should be dismissed because PAL was not her employer. ....................................................................................................... 14

         *i.    PAL had no authority either to hire or fire Plaintiff.* ............................................ 15

         *ii.    PAL did not have authority to promulgate work rules and assignments for Plaintiff or determine Plaintiff's conditions of employment.* ......................................... 16

         *iv.    PAL did not control Plaintiff's employment records.* .......................................... 18

         *v.    Plaintiff cannot refute the lack of a joint employment relationship* ................................ 18

      3.    PAL did not Act Under Color of State Law; Therefore, Plaintiff's 42 U.S.C. 1983 Claims Under the 1st and 14th Amendments Must Be Dismissed as a Matter of Law. ............... 19

      4.    Plaintiff's Title VII and PHRA Claims Must Be Dismissed as a Matter of Law for Failure to State a Claim and for Statue of Limitations Violations. ............................... 22

         *i.    Count I of the Amended Complaint Should Be Dismissed.* ..................................... 22

         *ii.    Count II of the Amended Complaint Should Be Dismissed* .................................... 24

         *iii.    Plaintiff's Title VII retaliation claims fails to state a claim.* .................................... 24

         *iv.    Plaintiff's PHRA claims are untimely.* ............................................................... 26

**IV.     CONCLUSION** ........................................................................................................... 27

## <u>TABLE OF AUTHORITIES</u>

**Cases**

*Albright v. Trs. of the Univ. of Penn.,*
    No. 19-00149, 2019 U.S. Dist. LEXIS 180654 (E.D. Pa. Oct. 18, 2019) ............................ 11

*Anderson v. Liberty Lobby, Inc.,*
    477 U.S. 242 (1986)................................................................................................... 11

*Anderson v. Liberty Lobby, Inc.,*
    477 U.S. 242 (1986)................................................................................................... 11

*Atkins v. Borough of Phoenixville,*
    336 F. Supp. 3d 511 (E.D. Pa. 2018) ...................................................................... 20

*Carvalho-Grevious v. Del. Stat. Univ.,*
    851 F.3d 249 (3d Cir. 2017)..................................................................................... 25

*Celotex Corp. v. Catrett,*
    477 U.S. 317 (1986)............................................................................................ 10, 11

*Charlton v. Paramus Bd. of Educ.,*
    25 F.3d 194 (3d Cir. 1994)....................................................................................... 11

*Davies v. Polyscience, Inc.,*
    126 F. Supp. 2d 391 (E.D. Pa. 2001) ...................................................................... 12

*Fieni v. Franciscan Care Ctr.,*
    No. 09-5587, 2011 U.S. Dist. LEXIS 113910 (E.D. Pa. Sept. 30, 2011) ............................ 11

*Gans v. Mundy,*
    762 F.2d 338 (3d Cir. 1985)..................................................................................... 11

*Glus v. G.C. Murphy Co.,*
    562 F.2d 880 (3d Cir.1977)...................................................................................... 12

*Hammond v. Creative Fin. Plan. Org., Inc.,*
    800 F. Supp. 1244 (E.D. Pa. 1992) ........................................................................ 20

*Hills v. Borough of Colwyn,*
    978 F. Supp. 2d 469 (E.D. Pa. 2013) ...................................................................... 12

*Hussein v. UPCOM Mercy Hosp.,*
    446 Fed. Appx. 108 (3d Cir. 2012).......................................................................... 25

*In re Enter. Rent-A-Car Wage & Hour Emp. Pracs. Litig.,*
    683 F.3d 462 (3d Cir. 2012) ........................................................................ 15

*Dixon v. Philadelphia Hous. Auth.,*
    43 F.Supp.2d 543 (E.D. Pa.1999) .................................................................. 14

*Jones v. Septa,*
    796 F.3d 323 (3d Cir. 2015) ........................................................................ 25

*Kach v. Hose,*
    589 F.3d 626 (3d Cir. 2009) ........................................................................ 20

*Kinnally v. Bell of Pennsylvania,*
    748 F. Supp. 1136 (E.D.Pa.1990) ................................................................ 12

*Lawrence v. Nat'l Westminster Bank N.J.,*
    98 F.3d 61 (3d Cir. 1996) ............................................................................ 10

*Leshko v. Servis,*
    423 F.3d 337 (3d Cir. 2005) ........................................................................ 20

*Lexington Ins. Co. v. W. Pa. Hosp.,*
    423 F.3d 318 (3d Cir. 2005) ........................................................................ 11

*Mandel v. M&Q Packaging Corp.,*
    706 F.3d 157 (3d Cir. 2013) ........................................................................ 23

*Matsushita Elec. Industrial Co., Ltd. v. Zenith Radio Corp.,*
    475 U.S. 574 (1986) .................................................................................... 11

*McLaughlin v. Rose Tree Media Sch. Dist.,*
    1 F. Supp. 2d 476 (E.D. Pa. 1998) .......................................................... 12, 13

*McLaughlin v. Rose Tree Media Sch. Dist.,*
    52 F. Supp.2d 484 (E.D. Pa. 1999) .............................................................. 12

*Moteles v. Univ. of Pennsylvania,*
    730 F.2d 913 (3d Cir. 1984) ........................................................................ 12

*Najmola v. Women's Healthcare Group pf Pa.,*
    No. 13-6519, 2014 U.S. Dist. LEXIS (E.D. Pa. July 24, 2014) ...................... 13

*Oliphant-Johns v. City of Philadelphia,*
    No. CIV.A. 01-2578, 2002 WL 31819630 (E.D. Pa. Dec. 13, 2002) ................ 12

*Petrucelli v. Bohringer & Ratzinger,*

46 F.3d 1298 (3d Cir. 1995) ........................................................................... 11

*Robertson v. Allied Signal, Inc.,*
914. F.2d 360 (3d Cir. 1990) ........................................................................ 11

*Schafer v. Board of Public Educ.,*
903 F.2d 243 (3d Cir. 1990) ......................................................................... 13

*Schoch v. First Fidelity Bancorporation,*
912 F.2d 654 (3d Cir. 1990) ......................................................................... 11

*Timmons v. Lutheran Children & Family Serv.,*
No. 93-4201, 1993 U.S. Dist. LEXIS 18011 (E.D. Pa. Dec. 17, 1993) ................................. 13

*Williams v. City of Philadelphia,*
No. CIV.A. 09-4826, 2010 WL 4181873 (E.D. Pa. Oct. 22, 2010) ...................................... 20

*Wils v. Phillips,*
No. 98-5752, 1999 U.S. Dist. LEXIS 4625 (E.D. Pa. Apr. 9, 1999) .................................... 23

*Woodson v. Scott Paper Co.,*
109 F.3d at 925 ......................................................................................... 27

**Statutes**

42 U.S.C. § 2000e–5(f)(1) .............................................................................. 16, 18

43 P.S. § 959(h) ........................................................................................ 30

5 U.S.C. § 552 et al .................................................................................... 14

Freedom of Information Act ("FOIA"), 5 U.S.C. § 552 et al. ............................................. 14

**Rules**

Fed. R. Civ. P. 56 ..................................................................................... 14

I.    **INTRODUCTION**

Plaintiff Evelyn Cintron ("Plaintiff" or "Cintron"), a longtime employee of the Philadelphia Police Department, brings the present action alleging that she was discriminated against, and ultimately constructively discharged, because of her gender and national origin. However, the facts of this case do not support those allegations. Instead, the facts present a contrary narrative and support the Motion for Summary Judgment by Defendant The Police Athletic League ("PAL"). More specifically, as Cintron's own deposition testimony makes plain:

- Cintron was never an employee of PAL and therefore she cannot pursue any employment-based claims against PAL;

- Cintron cannot demonstrate any joint employment relationship between PAL and the City of Philadelphia (the "City"), her actual employer;

- Even if she could establish such claims, the same must fail because Cintron failed to administratively exhaust her claims against PAL; and

- Even if none of the foregoing were true, Cintron's claims against PAL fail because she cannot offer any record evidence to support her claims and relies entirely on speculation, innuendo, her own (and otherwise uncorroborated) self-serving testimony, and her personal belief.

After multiple years of litigation, Plaintiff has not and cannot point to any factual basis for liability against PAL under any of the theories that she has asserted in this action. Accordingly, for the reasons set forth herein, PAL moves for summary judgment in its favor as to all of Plaintiff's claims.

II.   **STATEMENT OF UNDISPUTED FACTS**

**A.    Defendant The Police Athletic League**

PAL is an independently organized, 501(c)(3) non-profit, organized to help children and youths in the City of Philadelphia. *See* **Exhibit A**, a true and correct copy of Cintron's deposition transcript, Day 1 (hereafter "Cintron Dep. Vol. 1"), 45:17-46:8, 153:18-19; **Exhibit B**, a true and

correct copy of Cintron's deposition transcript, Day 2 (hereinafter "Cintron Dep. Vol. 2"), 12:7-8, 12:16-19, 43:13-19; *see also* Plaintiff's First Amended Complaint, ECF No. 40 (hereinafter "FAC"), ¶ 5.  In this regard, PAL "aspire[s] to be the premier youth-serving organization in the city, by reducing crime, promoting character development, and improving educational outcomes." *See* **Exhibit C** (PAL Employment Policies and Procedures for Civilian Employees, at Cintron/PAL – 0028).  In order to fulfill this mission, PAL brings together both its civilian workforce and members of the Philadelphia police department to deliver on its mission.  *See Id*.

PAL is overseen by an Executive Director.  **Exhibit D**, a true and correct copy of the deposition transcript of Maureen Rush ("Rush's Deposition"), 14:21-23; **Exhibit C**, at Cintron/PAL - 0030.  For the times relevant to this action, Ted Qualli ("Qualli") was PAL's Executive Director.  **Exhibit D**, Rush Deposition, 15:20-23.  Qualli reported to PAL's Board of Directors.  **Exhibit A**, Cintron Dep. Vol. 1, 48:24-29:4; **Exhibit D**, Rush Deposition, 14:21-23. Qualli was a PAL employee whose salary was paid by PAL. **Exhibit A**, Cintron Dep. Vol. 1, 50:2-5.

### B.    The City's PAL Unit

As it relates to the City's police department, there is a unit designated to work with PAL. **Exhibit A**, Cintron Dep. Vol. 1, 46:9-17.  The unit is overseen by a commanding officer.  **Exhibit D**, Rush Deposition, 14:10-20.  Officers are, in turn, assigned to that unit.  **Exhibit A**, Cintron Dep. Vol. 1, 46:12-13.  Officers assigned to the unit run PAL youth centers as well as the youth programs at those centers.  **Exhibit B**, Cintron Dep. Vol. 2, 12:12-15.

C.    **Distinction of and Separation between PAL and the City**

While PAL and the PAL unit work together in collaboration with each other, they are two separate entities.  **Exhibit A**, Cintron Dep. Vol. 1, 46:5-8, 18-25.  This distinction is demonstrated in numerous ways, including the respective staffing of the entities, their physical operations, and how resources are controlled.

As to personnel and staffing, PAL employees are civilians and not police officers. *See* **Exhibit C**, at Cintron/PAL-0028. Police officers are not PAL employees but, rather, City employees.  In this regard, police officers' salaries are paid by the City because "they are considered employees of the City of Philadelphia[.]" **Exhibit A**, Cintron Dep. Vol. 1, 39:8-11, 16-19; **Exhibit B**, Cintron Dep. Vol. 2, 12:4-5.  Police officers within the PAL Unit report up the chain of command to sergeants, who in turn report to PAL's commanding officer.  **Exhibit A**, Cintron Dep. Vol. 1, 47:1-20.  PAL does not set the officers' schedule.  **Exhibit B**, Cintron Dep. Vol. 2, 166:8-10.  Further, PAL's Executive Director "[could] not dictate orders to the officers[.]" **Exhibit A**, Cintron Dep. Vol. 1, 48:9-12.  To the extent the Executive Director required any actions of the police officers, "he would have to do it by letting the sergeant know, or [the commanding officer] know, so that [they could] let the officers know what they need to do." **Exhibit A**, Cintron Dep. Vol. 1, 48:12-15; *see also* **Exhibit A**, Cintron Dep. Vol. 1, 48:16-23.  Notably, the Executive Director – because he was "not employed by the City of Philadelphia – "[could not] impose the disciplinary process on police officers" and "didn't have the ability to" discipline police officers.  **Exhibit A**, Cintron Dep. Vol. 1, 50:10-20.  Any discipline to be imposed upon police officers would be imposed through the commanding officer.  **Exhibit A**, Cintron Dep. Vol. 1, 50:13-15.

Conversely, the City's commanding officer does not have the ability to discipline PAL employees.  **Exhibit A**, Cintron Dep. Vol. 1, 50:21-25.  PAL's civilian staff is not subject to the

City's departmental policies, which are applicable only to police officers (i.e., City employees). **Exhibit B**, Cintron Dep. Vol. 2, 50:7-15, 49:12-19. And as it relates to personnel termination, PAL's Executive Director does not have the ability to fire police officers while the commanding officer does not have the ability to fire any PAL employees. **Exhibit A**, Cintron Dep. Vol. 1, 53:19-25.

It is also important to note that PAL and the City maintain separate physical resources. For example, PAL centers are not located in City buildings. *See* **Exhibit E**, City's Responses to Interrogatories, <u>Response 22</u>. Deputy Commissioner Joseph Sullivan ("D/C Sullivan"), Cintron's Supervisor, did not have an office at PAL headquarters. *See* **Exhibit F**, D/C Sullivan's Responses to Interrogatories, <u>Response 22</u>. PAL does not have access to City documents. *See* **Exhibit G**, a true and correct copy of the deposition transcript of Gene Castellano ("Castellano Deposition"), 52:17-24. In fact, the City goes so far as to maintain its own printers so as to avoid PAL employees from seeing City documents. **Exhibit G**, Castellano Deposition, 52:24-53:2.

In terms of center staffing, PAL pays the rent for the PAL centers and buys the equipment utilized at the locations. **Exhibit G**, Castellano Deposition, 54:14-20; **Exhibit B**, Cintron Dep. Vol. 2, 29:2-4. The City does not maintain the PAL facilities. **Exhibit G**, Castellano's Deposition, 59:20-24. PAL does not need the City's approval for the operation of PAL, generally or with regard to these facilities. *See* **Exhibit H**, PAL's Responses to Interrogatories, <u>Response 15</u>.

It is also important to highlight that the City has no control over the resources deployed by PAL. The City does not provide funding to PAL. *See* **Exhibit E**, City's Responses to Interrogatories, <u>Response 8</u>. The City does not have the ability to direct how PAL should distribute gifts, donations, or money. *See* **Exhibit F**, D/C Sullivan's Responses to Interrogatories, <u>Response 10</u>. The City does not disburse donations or charitable gifts made to PAL. *See* **Exhibit H**, PAL's

Responses to Interrogatories, <u>Response 13</u>. At the same time, PAL does not need the City's approval in determining how donations and charitable gifts will be disbursed. *See* **Exhibit H**, PAL's Responses to Interrogatories, <u>Response 16</u>. And that is because, as noted above, the City has no control over gifts, funds, or donations made to PAL. *See* **Exhibit H**, PAL's Responses to Interrogatories, <u>Response 17</u>. In sum, PAL and the City are separate and independent entities and they operate as such.

### D.    Evelyn Cintron

Cintron began her employment with the City on or about July 22, 1992, working as a corrections officer for the Philadelphia Department of Prisons. *See* **Exhibit I**, CITY509; FAC, ¶ 16; **Exhibit A**, Cintron Dep. Vol. 1, 26:8-14. Approximately seven years later, Plaintiff joined the City's Police Department as a police officer. **Exhibit I**, CITY509; FAC, ¶ 17; **Exhibit A**, Cintron Dep. Vol. 1, 26:8-19. During her tenure as a police officer, Plaintiff received promotions to various positions within the Police Department, including corporal, sergeant, and ultimately lieutenant. **Exhibit A**, Cintron Dep. Vol. 1, 26:23-27:3; **Exhibit I**, CITY509-10.

While serving as lieutenant, in June 2016, then Philadelphia Police Commissioner Richard Ross ("Commissioner Ross") appointed Plaintiff to be the Commanding Officer of the Police Department's PAL Unit. **Exhibit A**, Cintron Dep. Vol. 1, 33:7-24, 34:14-18; FAC, ¶ 19. In this role, Cintron reported to, and took orders from, Police Commissioner Ross and Deputy Commissioner Myron Patterson ("D/C Patterson"). **Exhibit A**, Cintron Dep. Vol. 1, 40:19-41:19, 42:15-21; 43:5-10, 64:18-65:8. Both Commissioner Ross and D/C Patterson were City employees. **Exhibit A**, Cintron Dep. Vol. 1, 41:7-19. (In March 2017, Deputy Commissioner Joseph Sullivan ("D/C Sullivan") assumed command over the PAL unit and became Cintron's supervisor. *See*

**Exhibit J**, a true and correct of true and correct copy of the deposition transcript of Joseph Sullivan ("Sullivan Deposition"), 8:1-9, 15:16-22.)

Notably, as the Commanding Officer of the PAL Unit, Cintron had no employment relationship with PAL. Specifically:

- Cintron's salary was paid by the City (**Exhibit A**, Cintron Dep. Vol. 1, 38:13-18);

- Cintron received no paycheck or income from PAL (**Exhibit A**, Cintron Dep. Vol. 1, 38:19-21);

- Cintron received no bonuses from PAL (**Exhibit A**, Cintron Dep. Vol. 1, 39:5-6);

- If Cintron was paid any overtime, that was paid by the City (**Exhibit A**, Cintron Dep. Vol. 1, 42:9-14);

- PAL did not set Cintron's pay, which was set by the City (**Exhibit A**, Cintron Dep. Vol. 1, 184:14-20);

- Cintron received her benefits through the City (**Exhibit A**, Cintron Dep. Vol. 1, 38:22-25);

- Cintron received no benefits through PAL (**Exhibit A**, Cintron Dep. Vol. 1, 39:2-4);

- PAL did not set Cintron's schedule (**Exhibit B**, Cintron Dep. Vol. 2, 159:19-21);

- PAL did not have the ability to discipline or reprimand Cintron (**Exhibit B**, Cintron Dep. Vol. 2, 159:22-24);

- PAL did not have the ability to remove Cintron as the CO of the PAL unit (**Exhibit A**, Cintron Dep. Vol. 1, 139:14-18); and

- Cintron has no employment agreement or contract with PAL (**Exhibit A**, Cintron Dep. Vol. 1, 54:7-10).

1.   <u>Cintron expresses concern regarding the Wissinoming PAL Center</u>

During the first week of Cintron's assignment to the PAL unit (i.e. in June 2016), she visited fifteen PAL centers in the City. **Exhibit A**, Cintron Dep. Vol. 1, 80:15-24, 87:6-9; **Exhibit B**, Cintron Dep. Vol. 2, 19:19-24. Upon visiting the Wissinoming PAL center, Plaintiff took issue with the condition and physical appearance of the building and demanded that the Wissinoming

PAL center be shut down.  **Exhibit A**, Cintron Dep. Vol. 1, 84:11-85:9, 85:21-25, 87:10-13, 96:16-23; **Exhibit B**, Cintron Dep. Vol. 2, 20:10-18.  However, Qualli informed Plaintiff that she did not have authorization to shut down a PAL facility without obtaining approval from PAL's Board.  **Exhibit A**, Cintron Dep. Vol. 1, 86:14-24, 96:16-20.  However, by September 27, 2016, PAL's Board of Directors ("Board") had agreed to close the Wissinoming PAL Center and was "actively researching" a new location for that center.  *See* **Exhibit K**, 9/27/16 Minutes of the PAL Board Meeting, Cintron/PAL – 0053 ("Committee Reports").  Regardless, Plaintiff admits that she was never disciplined for closing the Wissinoming PAL Center. **Exhibit B**, Cintron Dep. Vol. 2, 29:5-7.  In addition, Plaintiff admits that "[a]t no time were there any complaints by PAL about Plaintiff's behavior communicated to Plaintiff, or anyone else."  FAC, ¶ 25.

2.    <u>Cintron's actions result in an Internal Affairs investigation</u>

On October 27, 2017, Commissioner Ross received an anonymous complaint regarding Cintron.  *See* **Exhibit L**.  The complaint stated that Cintron had created a "hostile work environment" at PAL when she threatened a female officer over an incident involving Cintron's assistant and alleged boyfriend, also a PAL unit officer.  *Id.*  The complaint further stated that "PAL civilians are working from home because of this hostile work environment," that those employees felt "threated by the ongoing situation," and that the author was writing anonymously "for fear of retaliation as I too feel threatened." *Id*. The compliant closed by asking that Commissioner Ross "investigate this matter, and take whatever action you feel necessary[.]" *Id*.  To this day, Cintron does not know who authored this letter.  **Exhibit A**, Cintron Dep. Vol. 1, 94:5-95:10; **Exhibit B**, Cintron Dep. Vol. 2, 91:4-10.

The City's Internal Affairs unit thereafter initiated an investigation into the anonymous complaint.  **Exhibit A**, Cintron Dep. Vol. 1, 93:8-20.  That investigation resulted, on January 11,

7

2018, with an internal court notice to Cintron requiring her to appear for questioning at its Internal Affairs office.  *See* **Exhibit M**.  Thereafter, on January 25, 2018, Sergeant Brent Conway of Internal Affairs ("Sergeant Conway"), in the presence of Plaintiff's attorney, interviewed Plaintiff regarding the anonymous complaint and related incidents that occurred at PAL.  **Exhibit A**, Cintron Dep. Vol. 1, 93:8-17; **Exhibit B**, Cintron Dep. Vol. 2, 105:12-108:7; **Exhibit N**, CITY137-153.  It was then, and only then and for the first time, that Cintron claimed that Qualli would "argue with me and intimidate me."  **Exhibit N**, CITY-152.  Cintron claimed that Qualli subjected Cintron to a "hostile work environment" and would "yell" at Cintron regarding "PAL related matters in his attempt to have me removed from the Unit."  *Id*.  Notably, however, "[n]o one" from PAL ever requested that Cintron be removed as the commanding officer of the PAL unit (and Cintron offers no record evidence to prove as much).  **Exhibit J**, Sullivan Deposition, 74:6-10.  In addition, when asked about this, Cintron did not submit any claim of discrimination in the PAL unit to the City.  *See* **Exhibit E**, City's Responses to Interrogatories, <u>Response 14</u>.  Nor had Plaintiff ever voiced such complaints to D/C Sullivan, her supervisor.  *See* **Exhibit F**, D/C Sullivan's Responses to Interrogatories, <u>Response 13</u>.

3.    <u>Cintron takes a Medical Leave of Absence and elects not to return</u>

Less than a week later, on January 31, 2018, Cintron submitted a request for a Family Medical Leave of Absence to begin on February 1, 2018.  **Exhibit A**, Cintron Dep. Vol. 1, 145:16-146:4, 146:19-24, 147:15-20; **Exhibit O**.  That request was submitted to City personnel for approval.  **Exhibit A**, Cintron Dep. Vol. 1, 145:20-146:21.  Because she was not a PAL employee, the form was not submitted to PAL and PAL was not involved in the approval request.  **Exhibit A**, Cintron Dep. Vol. 1, 146:23-24, 147:12-14.  Cintron's leave request was approved and she began that leave in February 2018.  **Exhibit A**, Cintron Dep. Vol. 1, 146:25-147:4, 147:15-17.

And while that leave was originally planned for three months, Cintron ultimately took nearly a year's leave.  **Exhibit O**; **Exhibit A**, Cintron Dep. Vol. 1, 147:18-20.

On January 22, 2019, Plaintiff submitted a Request to Separate from the City for her "retirement."  **Exhibit P**; **Exhibit A**, Cintron Dep. Vol. 1, 148:4-10, 149:21-151:4.  Her desired separation date was January 31, 2019.  **Exhibit P**.  After Cintron submitted her Request to Separate, she participated in an exit interview with Deputy Commissioner Robin Wimberly ("D/C Wimberly") to discuss retirement procedures to separate from the police department.  **Exhibit A**, Cintron Dep. Vol. 1, 148:13-21; **Exhibit B**, Cintron Dep. Vol. 2, 115:14-116:6.  However, at no point during that interview did Cintron complain about the work conditions at PAL or claim that she had been subject to a hostile work environment.  *See* **Exhibit Q**, a true and correct copy of the deposition transcript of Robin Wimberly ("Wimberly Deposition"), 17:7-13

Following this meeting with D/C Wimberly, Plaintiff requested that her leave be extended on an unpaid status.  **Exhibit A**, Cintron Dep. Vol. 1, 148:8-9, 148:13-17.  DC Wimberly made the request on Plaintiff's behalf to DC Coulter, another City employee, who denied Plaintiff's request for an extension of her leave.  **Exhibit A**, Cintron Dep. Vol. 1, at 148:10, 17-21, 149:6-14.  PAL was not involved in that decision because PAL did not have the authority to make that decision.  **Exhibit A**, Cintron Dep. Vol. 1, at 149:15-20.  Notably, at the time of her retirement, Cintron had not been disciplined in connection with the Internal Affairs investigation.  **Exhibit B**, Cintron Dep. Vol. 2, 117:1-7.

4.    Cintron files a Charge of Discrimination with the Equal Employment Opportunity Commission.

On May 22, 2019, Plaintiff dual-filed a Charge of Discrimination ("Charge") with the Equal Employment Opportunity Commission ("EEOC") and the Pennsylvania Human Relations Commission ("PHRC") alleging gender and national origin discrimination and retaliation against

the City of Philadelphia and PAL.  *See* **Exhibit R**.  But PAL did not receive notice of Cintron's Charge, nor was PAL aware of the claims and allegations asserted in the Charge that involved PAL.  *See* **Exhibit S**, Declaration of Gene Castellano (the "Castellano Declaration"), ¶ 5. Moreover, on June 10, 2019, when the Charge was dismissed by the EEOC, only the Plaintiff, her counsel, and the City were notified of the dismissal.  *See* **Exhibit T**, **Exhibit U**.  In fact, the EEOC has since made clear that it does not believe PAL was a party to the Charge. *See* **Exhibit W** Cintron/FIOA_001 & 004 (PAL is a "third party [to] the charge" and was "not a party to [the] charge of discrimination").[1]  Thereafter, on September 6, 2019, Plaintiff initiated the present action. That was the first PAL learned of Cintron's claims.  *See* **Exhibit S**, Castellano Declaration, ¶ 6.

## III.   ARGUMENT

### A.    Standard of Review

Federal Rule of Civil Procedure 56 requires entry of summary judgment against a party who fails to offer admissible evidence sufficient to establish the existence of every element essential to that party's case for which that party bears the burden of proof.  Fed. R. Civ. P. 56; *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 327 (1986).  Although a defendant bears the initial responsibility of asserting the basis for its motion, the defendant is not required to negate a plaintiff's claim.  Rather, the defendant must only demonstrate that there is an absence of evidence to support the plaintiff's case or, alternatively, offer affirmative evidence which demonstrates that the plaintiff cannot prove his or her case.  *Lawrence v. Nat'l Westminster Bank N.J.*, 98 F.3d 61, 69 (3d Cir. 1996).

After the defendant has met its initial burden, the plaintiff must present competent evidence designating "specific facts showing that there is a genuine issue for trial."  *Celotex*, 477 U.S. at

---

[1] Freedom of Information Act ("FOIA"), 5 U.S.C. § 552 *et al.*, request to access records from a federal agency.

324 (citation omitted). "[T]he mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986). The requirement is that there be no genuine issue of material fact. *Id*.; *Charlton v. Paramus Bd. of Educ.*, 25 F.3d 194, 197 (3d Cir. 1994), *cert. denied*, 513 U.S. 1022 (1994) (emphasis added). To survive a summary judgment motion, therefore, the non-moving party must come forward with specific, admissible, and credible evidence supporting each element essential to that party's case; conclusory allegations or denials are not enough. *Schoch v. First Fidelity Bancorporation*, 912 F.2d 654, 657 (3d Cir. 1990); *see also Matsushita Elec. Industrial Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986); *Gans v. Mundy*, 762 F.2d 338, 341 (3d Cir. 1985) (a plaintiff "cannot expect to rely merely upon bare assertions, conclusory allegations or suspicions" in resisting summary judgment) (citations omitted). Accordingly, in order to avoid summary judgment, a Plaintiff "must identify evidence of record sufficient to establish every element essential to the claim." *Petrucelli v. Bohringer & Ratzinger*, 46 F.3d 1298, 1308 (3d Cir. 1995). She must point to real and substantial evidence in support of her claims which is "capable of being admitted at trial." *Fieni v. Franciscan Care Ctr.*, No. 09-5587, 2011 U.S. Dist. LEXIS 113910, at *9 (E.D. Pa. Sept. 30, 2011) (citations omitted). Her beliefs, suspicions, and speculations are not evidence, and a material fact dispute cannot be created out of thin air. *Lexington Ins. Co. v. W. Pa. Hosp.*, 423 F.3d 318, 332-33 (3d Cir. 2005) (conjecture and speculation may not defeat a motion for summary judgment); *see also Albright v. Trs. of the Univ. of Penn.*, No. 19-00149, 2019 U.S. Dist. LEXIS 180654, at *10 (E.D. Pa. Oct. 18, 2019) (quoting *Robertson v. Allied Signal, Inc.*, 914. F.2d 360, 382 n.12 (3d Cir. 1990) ("An inference based upon a speculation or conjecture does not create a material factual dispute

sufficient to defeat entry of summary judgment"). Judged against these standards, Plaintiff's claims against PAL cannot survive summary judgment and PAL's motion should be granted.

**B.    Argument**

    1.    <u>Plaintiff failed to administratively exhaust her claims against PAL and her Title VII and PHRA claims should be dismissed.</u>

Cintron's claims against PAL should be dismissed because, as a threshold issue, Cintron failed to administratively exhaust her claims against PAL. Generally, a Title VII action cannot proceed against a defendant who was not named in the administrative complaint. *See* 42 U.S.C. § 2000e–5(f)(1); *Davies v. Polyscience, Inc.*, 126 F. Supp.2d 391, 393 (E.D. Pa. 2001); *McLaughlin v. Rose Tree Media Sch. Dist.*, 1 F. Supp. 2d 476, 481 (E.D. Pa. 1998). The purpose of requiring an aggrieved party to first resort to an administrative agency such as the EEOC or PHRC is twofold: to give notice to the charged party and to provide an avenue to resolve the situation without resorting to litigation." *Glus v. G.C. Murphy Co.*, 562 F.2d 880, 888 (3d Cir.1977); *Hills v. Borough of Colwyn*, 978 F. Supp. 2d 469, 478 (E.D. Pa. 2013). This allows the administrative agency a chance to address and to resolve the problem before it requires enormous expenditures of judicial resources in heavily overburdened courts. *Moteles v. Univ. of Pennsylvania*, 730 F.2d 913, 917 (3d Cir. 1984); *Oliphant-Johns v. City of Philadelphia*, No. CIV.A. 01-2578, 2002 WL 31819630, at *3 (E.D. Pa. Dec. 13, 2002); *see also Kinnally v. Bell of Pennsylvania*, 748 F. Supp. 1136, 1140 (E.D.Pa.1990) ("The purpose of filing before the PHRC/EEOC is to alert concerned parties of the opportunity for voluntary conciliation without the animosity, expense, and publicity of litigation."). As a result, "Title VII actions ordinarily may be brought only against a party previously named in an EEOC action." *McLaughlin v. Rose Tree Media Sch. Dist.*, 52 F. Supp.2d 484, 491 (E.D. Pa. 1999); *see also McLaughlin*, 1 F. Supp.2d at 481-482 ("Although the PHRA does not contain an analogous requirement, courts have held that the PHRA should be interpreted

consistently with Title VII") (citations omitted).  In situations where an aggrieved party is not put on notice of a charge, and claims are subsequently asserted, dismissal is appropriate.  *See*, *e.g.*, *Timmons v. Lutheran Children & Family Serv.*, No. 93-4201, 1993 U.S. Dist. LEXIS 18011, at *12 (E.D. Pa. Dec. 17, 1993).

Here, the Charge was never served upon PAL.  **Exhibit S**, Castellano Declaration, ¶ 5. PAL was not a party to the Charge.  *See* **Exhibit W** (PAL is a "third party [to] the charge" and was "not a party to [the] charge of discrimination").  The Charge was dismissed, without notice to PAL.  **Exhibit T**; **Exhibit U**.  PAL was not aware of Cintron's claims until the lawsuit was filed. **Exhibit S**, Castellano Declaration, ¶ 6.  Under these circumstances, it is appropriate to dismiss Cintron's claims against PAL. *See Timmons*, 1993 U.S. Dist. LEXIS 18011, at *12.

To the extent that Cintron argues that PAL was named in the body of the Charge, the claims against it must still be dismissed because PAL was not on notice of the Charge.  *See Najmola v. Women's Healthcare Group pf Pa.*, No. 13-6519, 2014 U.S. Dist. LEXIS 101583, at *11-12 (E.D. Pa. July 24, 2014) (where the party, even if affiliated with another named in the charge and having the same address, does not receive notice of the charge, dismissal is appropriate); *McLaughlin*, 1 F. Supp.2d at 482 (where, based on the allegations, it was not clear that the party had sufficient notice of the charge, dismissal was appropriate).[2]  Third Circuit case law is instructive on this issue in that it sets forth two main factors to consider when determining whether to dismiss a suit against an unnamed party to an administrative agency charge: (1) whether the unnamed party received notice and (2) whether there is a shared commonality of interest between the unnamed party and the named party."  *Schafer*, 903 F.2d at 255 (3d Cir. 1990); *Hills v. Borough of Colwyn*, 978 F.

---

[2] There is a narrow exception to the exhaustion requirement where the unnamed party received notice of the charge and there is a shared commonality of interest with the named party.  *See Schafer v. Board of Public Educ.*, 903 F.2d 243, 242 (3d Cir. 1990).  Here, there is no evidence that PAL ever received notice of the Charge.

Supp. 2d 469, 479 (E.D. Pa. 2013); *see also Dixon v. Philadelphia Hous. Auth.*, 43 F.Supp.2d 543, 546 (E.D. Pa.1999) (noting that the *Schafer* "articulation of the exception is a shorthand version of the four-part test stated in *Glus*.").

Here, the record evidence is clear that PAL was never notified or made aware of the Charge. In addition, PAL does not share any common interests with a municipality such as the City of Philadelphia or its Police Department. As a result, PAL was deprived of its opportunity to remedy this situation without litigation. To allow Cintron to proceed to trial with her claims against PAL will further prejudice PAL by forcing it to incur exorbitant defense costs and expend significant workhours to litigate further a matter that could have been resolved through an administrative agency as required by law. *See* 42 U.S.C. § 2000e–5(f)(1). Therefore, Plaintiffs' Title VII and PHRA claims against PAL should be dismissed.

2.    Cintron's Title VII and PHRA claims should be dismissed because PAL was not her employer.

Even if the foregoing were not true, Cintron's Title VII and PHRA claims against PAL should be dismissed because she cannot assert any employment-based claims against it. The Third Circuit has explained that while a joint employment relationship must be based on a consideration of the total employment situation and the economic realities of the work relationship, four key factors should be considered to determine the presence of a joint employment relationship: "(1) the alleged employer's authority to hire and fire the relevant employees; (2) the alleged employer's authority to promulgate work rules and assignments and to set the employees' conditions of employment: compensation, benefits, and work schedules, including the rate and method of payment; (3) the alleged employer's involvement in day-to-day employee supervision, including employee discipline; and (4) the alleged employer's actual control of employee records, such as payroll, insurance, or taxes." *In re Enter. Rent-A-Car Wage & Hour Emp. Pracs. Litig.*, 683 F.3d

14

462, 469-470 (3d Cir. 2012). When analyzed against the facts of this case and Cintron's own admissions confirmed through deposition testimony, it is clear that PAL did not have a joint employer relationship with the City of Philadelphia.

        *i.*       *PAL had no authority either to hire or fire Plaintiff.*

Cintron acknowledges that she was employed by the City, where she worked as a police officer for the Philadelphia Police Department. **Exhibit A**, Cintron Dep. Vol. 1, 33:17-10, 35:9-12. PAL did not hire Cintron (or any police officers) and she did not enter into any employment agreement or contract regarding any specified relationship – much less an employment relationship – with PAL. **Exhibit A**, Cintron Dep. Vol. 1, 54:7-10. Police officers who work in the police department's PAL Unit must be approved by the Police Department's deputy commissioner or commissioner, not PAL. **Exhibit A**, Cintron Dep. Vol. 1, 168:23-169:3. Moreover, PAL does not have authority to fire City employees, as even PAL's high-level executives could not fire Plaintiff or any other Philadelphia police officers who worked in the Police Department's PAL Unit. **Exhibit A**, Cintron Dep. Vol. 1, 53:19-21. Similarly, Plaintiff, even in her role as Commanding Officer of the PAL Unit, could not fire any of the PAL's private civilian workforce. **Exhibit A**, Cintron Dep. Vol. 1, 53:22-25. At the time of the instant action, the Philadelphia Police Department, *i.e.*, Commissioner Ross, decided which officers worked in the Police Department's PAL Unit, not PAL. **Exhibit A**, Cintron Dep. Vol. 1, 35:19-23. And quite significant, Cintron admits that PAL could not remove her as commanding officer of the PAL unit. Cintron Dep. Vol. 1, 139:14-18.

Commissioner Ross of the Philadelphia Police Department, not PAL, appointed Plaintiff to the position of Commanding Officer to manage the department's PAL Unit and its police officers. **Exhibit A**, Cintron Dep. Vol. 1, 33:7-24, 34:14-18; FAC, ¶¶ 19-20; *see also* **Exhibit G**,

Castellano's Deposition, 53:18-22. Plaintiff reported to Commissioner Ross and the deputy commissioner for day-to-day activities, both of whom were City employees. **Exhibit A**, Cintron Dep. Vol. 1, 30:22-31:4, 40:19-41:2, 41:11-19. Cintron is aware of no other individuals – i.e., anyone involved with PAL – who has a role in that decision. **Exhibit A**, Cintron Dep. Vol. 1, 35:9-12; *see also* **Exhibit G**, Castellano's Deposition, 53:18-22.

> ii.    *PAL did not have authority to promulgate work rules and assignments for Plaintiff or determine Plaintiff's conditions of employment.*

PAL could not give orders to police officers and PAL did not have the authority to create Plaintiff's work schedule. **Exhibit A**, Cintron Dep. Vol. 1, 48:9-23, 174:14-21, 175:4-12; **Exhibit B**, Cintron Dep. Vol. 2, 159:19-21, 166:8-10. In fact, PAL had to abide by the Police Department's departmental policies as told by Plaintiff when she advised PAL to schedule PAL events according to the officer's work schedules which are pre-determined by the Police Department. **Exhibit A**, Cintron Dep. Vol. 1, 175:4-17; **Exhibit B**, Cintron Dep. Vol. 2, 166:2-10. To the extent the Executive Director required any actions of the police officers, "he would have to do it by letting the sergeant know, or [the commanding officer] know, so that [they could] let the officers know what they need to do." **Exhibit A**, Cintron Dep. Vol. 1, 48:12-15; *see also* **Exhibit A**, Cintron Dep. Vol. 1, 48:16-23.

Furthermore, PAL did not have any authority to determine the conditions of Plaintiff's employment as PAL did not have any contractual and/or employment agreements with Plaintiff, and PAL did not contribute in any way to Plaintiff's compensation. **Exhibit A**, Cintron Dep. Vol. 1, 32:7-11, 38:13-21, 39:1-23, 54:7-10, 184:14-20. Plaintiff, as with other police officers in the PAL Unit, received all employment benefits, pay, income, and bonuses directly from the City of Philadelphia, not PAL. **Exhibit A**, Cintron Dep. Vol. 1, 32:7-11, 38:13-39:2, 39:5-6, 54:7-10, 178:17-23, 179:7-17, 180:1-13, 184:8-20; **Exhibit B**, Cintron Dep. Vol. 2, 12:4-5. City police

16

officers were not allowed to receive compensation from PAL.  **Exhibit A**, Cintron Dep. Vol. 1, 39:11-23, 173:21-24; **Exhibit B**, Cintron Dep. Vol. 2, 12:4-5 *cf.* 49:21-50:9 ("PAL employees received their salary from PAL, not the City of Philadelphia.").  If Plaintiff worked a PAL event that extended beyond her scheduled hours, Plaintiff had to submit a request for overtime through the Philadelphia Police Department, not PAL.  **Exhibit A**, Cintron Dep. Vol. 1, 41:23-42:14).  If approved, Plaintiff received compensation for any applicable regular and/or overtime hours from the City, not PAL.  **Exhibit A**, Cintron Dep. Vol. 1, 39:1-23, 41:23-42:14, 173:21-24, 174:4-7; **Exhibit B**, Cintron Dep. Vol. 2, 12:4-5.  It is also significant to note that the City did not provide PAL with any policies or procedures governing the hiring or placement of police officers at PAL units.  **Exhibit G**, Castellano Deposition, 53:13-17.

> iii.   *PAL did not supervise Plaintiff and it did not have authority to discipline Plaintiff.*

As "an independently organized non-profit organization," PAL had no authority to discipline Plaintiff or any Philadelphia police officers.  FAC, ¶ 6; **Exhibit A**, Cintron Dep. Vol. 1, 50:10-20, 51:2-7; **Exhibit B**, Cintron Dep. Vol. 2, 159:22-24.  Due to the Fraternal Order of Police contractual and collective bargaining agreements with police personnel, any disciplinary action involving sworn police officers must be administered through a superior officer, not a civilian PAL employee.  **Exhibit A**, Cintron Dep. Vol. 1, 50:10-20, 51:14-20; **Exhibit B**, Cintron Dep. Vol. 2, 159:22-24, 166:2-7.  Specifically, the Executive Director – because he was "not employed by the City of Philadelphia – "he [could not] impose the disciplinary process on police officers" and "didn't have the ability to" discipline police officers.  **Exhibit A**, Cintron Dep. Vol. 1, 50:10-20.  Any discipline to be imposed upon police officers would be imposed through the commanding officer.  **Exhibit A**, Cintron Dep. Vol. 1, 50:13-15.  Similarly, Plaintiff had no authority to discipline any civilian PAL employees.  **Exhibit A**, Cintron Dep. Vol. 1, 50:18-51:25, 52:22-

53:18.  When Plaintiff wanted to discipline a PAL civilian, she spoke with Qualli because PAL employees reported to Qualli, as they were "his staff" and "his employees."  **Exhibit A**, Cintron Dep. Vol. 1, 52:11-25, 53:14-18.  Plaintiff and Philadelphia police officers working in the PAL Unit did not report to PAL executives; instead, they reported to their appropriate superior employed by the City: Plaintiff reported to Commissioner Ross and the deputy commissioner, and the police officers at PAL reported to Plaintiff.  **Exhibit A**, Cintron Dep. Vol. 1, 30:22-31:4, 36:18-25, 40:19-23, 41:11-19, 47:2-23.  Furthermore, PAL could not give Plaintiff any work directives or orders to follow.  **Exhibit A**, Cintron Dep. Vol. 1, 48:9-15.

> ### iv.       *PAL did not control Plaintiff's employment records.*

PAL does not maintain or control any City of Philadelphia personnel files or employment records for any Philadelphia police officers, including Plaintiff.  *See* **Exhibit A**, Cintron Dep. Vol. 1, 184:21-185:3.  Most importantly, Plaintiff has put forth no evidence that PAL could access her employment records maintained by the City or that PAL maintained a personnel file on her.  **Exhibit A**, Cintron Dep. Vol. 1, 184:25-185:3.  Rather, Plaintiff submitted all employment related documents to designated departments and personnel within the City's Police Department, not PAL.  **Exhibit A**, Cintron Dep. Vol. 1, 145:24-146:24, 176:13-177:7, 177:12-25.  When Plaintiff submitted paperwork to request a leave of absence or separation, such requests were made, maintained, and approved through the Philadelphia Police Department's personnel department and the officer's commanding officer, not PAL.  **Exhibit A**, Cintron Dep. Vol. 1, 145:24-146:24, 176:13-177:7, 177:12-25, 184:21-24; **Exhibit O**, **Exhibit P**.

> ### v.       *Plaintiff cannot refute the lack of a joint employment relationship*

PAL anticipates that Plaintiff will attempt, as she attempted to do in her Amended Complaint, to conflate and muddy the relations between PAL and the City.  But, as noted above,

there is simply no evidence to support that that.  Further, as stated in her own Amended Complaint, Plaintiff's position was "Commanding Officer of the PAL ***unit of the Philadelphia Police Department***."  FAC, ¶ 19; **Exhibit A**, Cintron Dep. Vol. 1, 46:9-13 (emphasis added).  She managed the operations of the ***Police Department's*** PAL Unit that collaborates with the PAL; however, she did not manage the operations of the PAL corporate entity itself.  FAC, ¶ 20; **Exhibit A**, Cintron Dep. Vol. 1,35:18-23, 46:4-13.  *See also* **Exhibit B**, Cintron Dep. Vol. 2, 162:17-19, 167:8-16.  The Philadelphia Police Department assigns ***its*** personnel to ***collaborate*** and work ***with*** PAL, not ***for*** PAL.  FAC, ¶ 6; **Exhibit A**, Cintron Dep. Vol. 1, 39:7-11, 39:16-19, 45:17-46:13; **Exhibit B**, Cintron Dep. Vol. 2, 12:12-15, 17:3-10.  PAL had no control over Plaintiff's employment, just as she had no control over PAL or its civilian employees.  In accordance with Plaintiff's own testimony and the undisputed facts of the record, PAL had no authority over Plaintiff's compensation, hiring, tenure, terms, conditions or privileges of her employment, classification, work assignments, or opportunities.  By Plaintiff's own admission, the Philadelphia police officers who worked at PAL are considered employees of the City, not PAL.  **Exhibit A**, Cintron Dep. Vol. 1, 39:16-21.  Plaintiff's sole employer during the time period relevant to the Complaint was the City.  Therefore, Plaintiff's Title VII and PHRA claims against the PAL must be dismissed, with prejudice.

       3.     <u>PAL did not Act Under Color of State Law; Therefore, Plaintiff's 42 U.S.C. 1983 Claims Under the 1st and 14th Amendments Must Be Dismissed as a Matter of Law.</u>

For claims brought under 42 U.S.C. § 1983 ("Section 1983"), the pleadings must satisfy two requirements: "(1) the conduct complained of was committed by a person acting under color of state law, and (2) the alleged conduct deprived the plaintiff of rights, privileges, or immunities secured by the Constitution or laws of the United States."  *Hammond v. Creative Fin. Plan. Org.,*

*Inc.*, 800 F. Supp. 1244, 1248 (E.D. Pa. 1992). "Action by a state actor is a 'threshold issue,' and liability does not attach under Section 1983 'for those **not** acting under color of law.'" *Atkins v. Borough of Phoenixville*, 336 F. Supp. 3d 511, 518 (E.D. Pa. 2018) (emphasis added).

The analysis goes one step further for Section 1983 claims against private actors. Although there is no "simple line" between states and private persons, there must be a "'close nexus between the State and the challenged action' such that seemingly private behavior 'may be fairly treated as that of the State itself.'" *Leshko v. Servis*, 423 F.3d 337, 339 (3d Cir. 2005) (internal citations omitted). To determine whether a "close nexus" exists, the Third Circuit outlined three fact-specific tests to consider: "(1) whether the private entity has exercised powers that are traditionally the exclusive prerogative of the state; (2) whether the private party has acted with the help of or in concert with state officials; and (3) whether the state has so far insinuated itself into a position of interdependence with the acting party that it must be recognized as a joint participant in the challenged activity." *Kach v. Hose*, 589 F.3d 626, 646 (3d Cir. 2009); *Williams v. City of Philadelphia*, No. CIV.A. 09-4826, 2010 WL 4181873, at *3 (E.D. Pa. Oct. 22, 2010). The focus of such inquiry is not to determine whether the state exercises control over a putative state actor as a general matter, but whether the state has exercised control over the ***particular conduct*** that gave rise to the plaintiff's alleged deprivation of rights. *Kach*, 589 F.3d at 649 (emphasis added).

It is Cintron's burden to show that PAL was a state actor to move forward with her Section 1983 claims against PAL. *See Atkins v. Borough of Phoenixville*, 336 F. Supp. 3d 511, 518 (E.D. Pa. 2018). However, during discovery, Plaintiff has not brought forth any facts – as none exist – that the City exercised control over PAL's conduct that resulted in Cintron being deprived of any constitutional rights. Cintron pleads PAL is an independent organization, yet only alleges that "D/C Sullivan urged and convinced other members of Defendant PAL's leadership to isolate her,

exclude her from meetings and treat her with general hostility." FAC, ¶¶ 6, 62. Plaintiff then attempts to advance her Section 1983 claims against PAL due to PAL's "failure to train, supervise and instruct Defendant Sullivan, who then retaliated against the Plaintiff as described herein," which allegedly deprived Plaintiff of her First and Fourteenth Amendment rights. FAC ,¶ 85. But as Cintron herself admits, PAL board members could not give orders to police officers. Furthermore, the board members never told Plaintiff that they wanted her removed from the unit, as they ***did not*** have the ability or authority to make this decision. **Exhibit A**, Cintron Dep. Vol. 1, 53:19-21, 135:11-22, 139:14-18. Moreover, DC Sullivan testified that nobody instructed him to exclude Plaintiff from any PAL meetings. **Exhibit J**, Sullivan Deposition. 73:14-16. In fact, DC Sullivan testified without contradiction that neither PAL personnel nor board members ever requested that Plaintiff be removed as commanding officer of the PAL Unit. Id. at 74:6-10.

Even if Cintron alleges that PAL acted with the help or in concert with state actors, the FAC does not allege specific conduct by PAL that violated Plaintiff's First and Fourteenth Amendment rights. PAL could not give orders to Philadelphia police officers, which includes DC Sullivan, to support any inference that PAL influenced the Philadelphia Police Department or City employees to "isolate," "exclude," or "treat [Plaintiff] with general hostility," such that it amounts to a deprivation of rights, privileges, or immunities secured by the Constitution or laws of the United States. *See* **Exhibit A**, Cintron Dep. Vol. 1, 48:9-15. Furthermore, PAL does not conduct police training and it does not supervise or instruct City employees. *See* **Exhibit A**, Cintron Dep. Vol. 1, 39:7-11, 39:16-19, 48:9-15. As further proof that these §1983 claims have no factual basis, Plaintiff participated in an interview with PAL's board members where her gender and national origin were easily identifiable. During that time, if Plaintiff's national origin and gender were problematic or unwelcomed, PAL board members would not have agreed to allow Plaintiff to serve

over the Police Department's PAL Unit. This is so because, according to Plaintiff's testimony, PAL's board members were required to approve her appointment before she could have accepted the position of commanding officer. *See* **Exhibit A**, Cintron Dep. Vol. 1, 35:18-23, 37:14-25. Plaintiff's real issue is that she did not have unfettered control over PAL and its civilian staff. *See* **Exhibit A**, Cintron Dep. Vol. 1, 67:11-23, 97:16-23, 105:20-106:11; **Exhibit B**, Cintron Dep. Vol. 2, 24:10-25:9, 58:21-61:12, 168:1-169:18. Therefore, Plaintiff cloaks her own personal vendetta against the City and PAL with a poorly supported discrimination claim that cannot proceed as a matter of law.

Accordingly, based on ample evidence of record, no reasonable jury could return a verdict for Plaintiff for her Section 1983 1st and 14th Amendment claims against PAL because PAL is not a state actor and it did not engage in conduct that violated Plaintiff's rights. Therefore, Plaintiff's Section 1983 claims against PAL must be dismissed, with prejudice.

    4.    <u>Plaintiff's Title VII and PHRA Claims Must Be Dismissed as a Matter of Law for Failure to State a Claim and for Statue of Limitations Violations</u>.

Even if Plaintiff could overcome the foregoing threshold issues relating to her Title VII and PHRC claims (which PAL maintains she cannot), her claims against PAL still fail as a matter of law.

*i.    Count I of the Amended Complaint Should Be Dismissed.*

Plaintiff does not allege that she was fired from the City's Police Department. Rather, she concedes that she retired from the City due to the "stressful and hostile work environment caused her by D/C Sullivan." FAC, ¶ 68; *see also* **Exhibit A**, Cintron Dep. Vol. 1, 148:4-10, 149:21-151:4; **Exhibit P**. Therefore, Plaintiff's claim under Count I of the Amended Complaint is for constructive discharge.

In order to establish a constructive discharge claim, a plaintiff must show that the employer "knowingly permitted conditions of discrimination in employment so intolerable that a reasonable person subject to them would resign." *Wils v. Phillips*, No. 98-5752, 1999 U.S. Dist. LEXIS 4625, * 8 (E.D. Pa. Apr. 9, 1999) (citing *Goss v. Exxon Office Sys. Co.*, 747 F.2d 885, 888 (3d Cir. 1984)).  Factors to consider in such an analysis include whether the employee was threatened with discharge, encouraged to resign, demoted, subjected to lower pay or benefits, transferred to a less desirable position, or subjected to altered job responsibilities.  *Mandel v. M&Q Packaging Corp.*, 706 F.3d 157, 169 (3d Cir. 2013) (citing *Cowell v. Rite Aid. Corp.*, 602 F.3d 495, 503 (3d Cir. 2010)).  Despite several years of discovery, Plaintiff cannot put forth any facts to establish that PAL threatened her with discharge, encouraged her to resign from the Police Department, demoted her or altered her pay, benefits, job responsibilities or transferred her into a different position. Plaintiff cannot put forth any facts to establish the factors needed to prove a constructive discharge claim against PAL, because PAL had no ability to do any of these things as Plaintiff admits to herself as discussed thoroughly above.  Cintron admits that PAL had no ability to remove her position as commanding officer.  **Exhibit A**, Cintron Dep. Vol. 1, 139:14-18.  And Cintron has adduced no evidence, apart from self-serving speculation, that PAL made any effort to have her removed.  *See, e.g.*, **Exhibit J**, Sullivan Deposition, 74:6-10.  (It should also be noted that Plaintiff was on FMLA leave, approved by the City, for an entire year before her resignation, which undercuts any suggestion that she would have been subject to intolerable working conditions at the time of her retirement.  **Exhibit A**, Cintron Dep. Vol. 1, 145:16-146:4, 146:19-24, 147:15-20; **Exhibit O**; **Exhibit A**, Cintron Dep. Vol. 1, 148:4-10, 149:21-151:4; **Exhibit P**.  Accordingly, Plaintiff's Title VII claim under Count I against PAL must be dismissed, with prejudice.

*ii.   Count II of the Amended Complaint Should Be Dismissed*

Plaintiff's Title VII claim for disparate treatment as alleged in Count II, must also be dismissed.  In short, Cintron's disparate treatment theory is predicated on the idea that she was excluded from PAL meetings.  However, this claim fails for at least two reasons.  As a threshold issue, there is no evidence that Cintron was actually excluded from any meetings.  *See* **Exhibit J**, Sullivan Deposition, 73:14-16, 73:21-24. But more importantly, Cintron herself cannot articulate any evidence to support the claim.

The commanding officer of PAL prior to Cintron was Lieutenant Eddis ("Eddis"), a white male.  **Exhibit A**, Cintron Dep. Vol. 1, 120:5-13.  According to Cintron, Eddis was not excluded from PAL meetings.  **Exhibit A**, Cintron Dep. Vol. 1, 120:7.  Cintron claims, contrary to Eddis, that she was excluded from PAL meetings.  **Exhibit A**, Cintron Dep. Vol. 1, 120:16-20.  This is Cintron's evidence of disparate treatment.  **Exhibit A**, Cintron Dep. Vol. 1, 120:21-121:14. But Cintron then goes on to admit that she has no personal knowledge of which meetings Eddis was invited to or participated in, relies entirely on alleged hearsay statements of witnesses she never deposed and, in any event "[*doesn't] know if [Eddis] was excluded from any of the meetings*[.]" **Exhibit A**, Cintron Dep. Vol. 1, 122:15-20, 121:21-25 (emphasis added).  Therefore, Plaintiff has no evidence other than her own speculation (based on hearsay) that she was treated less favorably than her white, male predecessor when she was the commanding officer of the PAL Unit. Therefore, without more, Plaintiff's claim for disparate treatment under Title VII as alleged in Count II must also be dismissed.

*iii.      Plaintiff's Title VII retaliation claims fails to state a claim.*

Finally, Plaintiff's Title VII retaliation claim as alleged in Count III also fails to state a claim as relates to PAL.  "A prima facie case of illegal retaliation requires a showing of (1)

protected employee activity; (2) adverse action by the employer either after or contemporaneous with the employee's protected activity; and (3) a causal connection between the employee's protected activity and the employer's adverse action." *Jones v. Septa*, 796 F.3d 323, 329 (3d Cir 2015) (quoting *EEOC v. Allstate Ins. Co.*, 778 F.3d 444, 449 (3d Cir. 2015)). The ultimate burden on a plaintiff in a Title VII retaliation claim is to prove that retaliatory animus was the "but-for" cause of the adverse employment action. *Carvalho-Grevious v. Del. Stat. Univ.*, 851 F.3d 249, 258 (3d Cir. 2017) (citing *Univ. of Tex. Sw. Med. Ctr. v. Nasser*, 133 S. Ct. 2517, 2521 (2013)). In evaluating such causal connections, the Court should evaluate whether the plaintiff has demonstrated (1) a temporal proximity between the alleged activity and the alleged retaliation and (2) the existence of a "pattern of antagonism in the intervening period." *Hussein v. UPCOM Mercy Hosp.*, 446 Fed. Appx. 108, 112 (3d Cir. 2012) (citing *Jensen v. Potter*, 435 F.3d 444, 450 (3d Cir. 2006)).

Plaintiff alleges that the protected activity that she engaged in related to her report of funding disparities and unsafe physical conditions at the PAL Wissinoming Center. FAC, ¶¶ 21-26, 30. However, this claim fails for three reasons. First, as a threshold, Plaintiff has no evidence to demonstrate that she ever made any complaints about the Wissinoming Center or about funding disparities. *See* **Exhibit J**, Sullivan Deposition. 69:20-70:4; **Exhibit E**, City's Responses to Interrogatories, Response 8; **Exhibit F**, D/C Sullivan's Responses to Interrogatories, Response 11; **Exhibit H**, PAL's Responses to Interrogatories, Response 23. Second, even if that were true, there is simply no temporal proximity to Cintron's complaint about the Wissinoming Center. Cintron was appointed as commanding office of the PAL unit in June 2016; the Wissinoming Center was closed by the end of September 2016; Cintron did not take leave until January 2018 and did not retire until January 2019. **Exhibit A**, Cintron Dep. Vol. 1, 33:22-25; 87:6-9; **Exhibit**

**K**, 0052, 0053; **Exhibit O**; **Exhibit P**.  Accordingly, there is no temporal proximity between Cintron's alleged complaints and the end of her employment.

And third, even if any of that were not true, there is no record evidence that Cintron was subject to any adverse employment action for those complaints.  **Exhibit B**, Cintron Dep. Vol. 2, 29:5-7; see also **Exhibit B**, Cintron Dep. Vol. 2, 117:1-7.  Accordingly, Cintron's retaliation claim should be dismissed.

*iv.  Plaintiff's PHRA claims are untimely.*

Cintron's PHRA claims are untimely as alleged against PAL.  As alleged in the FAC, Plaintiff cites the following two actions as being related to discriminatory actions taken by PAL against her:

- After Defendant Sullivan began his responsibilities as Plaintiff's immediate supervisor, members of the PAL Board and members of the police department refused to involve Plaintiff in PAL related matters.

- In still further response to the Plaintiff's efforts and complaints as described herein, D/C Sullivan urged and convinced other members of Defendant PAL's leadership to isolate her, exclude her from meetings and to treat her with general hostility.

FAC, ¶¶ 45 & 62.  These interactions with PAL could have taken place <u>only before</u> Plaintiff's medical leave started as of February 1, 2018.  **Exhibit O**.  The PHRA requires that complaints filed under the PHRA "be so filed within one hundred eighty days after the alleged act of discrimination." 43 P.S. § 959(h).  Therefore, as Plaintiff's last day in the office prior to her medical leave began was January 31, 2018, the PHRA required that Plaintiff file any allegedly discriminatory actions by PAL within 180 days of their alleged occurrence, or at the latest, by July 30, 2018.  The earliest date that Plaintiff pursued any administrative action, however, was her EEOC Charge filed against the City on May 22, 2019, four hundred seventy-six (476) days after her last day in the office.  **Exhibit R**. Therefore, Plaintiff's PHRA claims as alleged in the

Complaint against PAL must be dismissed as untimely.  "If a plaintiff fails to file a timely complaint with the PHRC, then he or she is precluded from judicial remedies under the PHRA." *Woodson v. Scott Paper Co.*, 109 F.3d 913, 925 (3d Cir 1997).  Therefore, Plaintiff's state law PHRA claims of discrimination and retaliation asserted under Counts V and VI of the Amended Complaint as related to PAL must be dismissed, with prejudice.

## IV.    CONCLUSION

In light of the foregoing, Defendant the Police Athletic League respectfully requests that its Motion be granted in its entirety and that all claims against it be dismissed with prejudice.

Respectfully submitted,

**O'HAGAN MEYER PLLC**

*/s/ Kevin L. Golden*
Kevin L. Golden, Esquire (#94210)
Michon L. Crawford, Esquire (#78532)
Three Logan Square
1717 Arch Street, Suite 3910
Philadelphia PA 19103
Phone: 215-461-3323
kgolden@ohaganmeyer.com
mcrawford@ohaganmeyer.com
*Counsel for Defendant, The Police Athletic League*