**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| EVELYN CINTRON, | : | |
| Plaintiff, | : | CIVIL ACTION |
| | : | |
| v. | : | |
| | : | NO. 19-4078 |
| CITY OF PHILADELPHIA, et al., | : | |
| Defendants. | : | |

## ORDER

    **AND NOW**, this _____ day of _____, 2025, upon consideration of Defendants the City of Philadelphia and Joseph Sullivan's Motion for Summary Judgment, and any response filed thereto, it is hereby **ORDERED** that the Motion is **GRANTED** and Plaintiff's claims against the City of Philadelphia and Joseph Sullivan are dismissed with prejudice.

                       **BY THE COURT:**


                       _____

                       **SURRICK, J.**

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| EVELYN CINTRON, | : | |
| | : | |
| Plaintiff, | : | CIVIL ACTION |
| | : | |
| v. | : | |
| | : | NO. 19-4078 |
| CITY OF PHILADELPHIA, et al., | : | |
| Defendants. | : | |
| | : | |

      Defendants, City of Philadelphia and Joseph Sullivan, file this Motion for Summary Judgment seeking judgment in their favor on all of Plaintiff's claims on the grounds more fully described in the supporting memorandum of law and attached hereto.

                          Respectfully submitted,

                          CITY OF PHILADELPHIA LAW DEPARTMENT

DATED: January 24, 2025   BY:   /s/ *Sharon E. Ulak*
                                Sharon E. Ulak
                                Divisional Deputy City Solicitor
                                PA ID # 316198
                                Law Department-Labor & Employment Unit
                                1515 Arch Street, 15th Floor
                                Philadelphia, PA 19102
                                Attorney for Defendants
                                City of Philadelphia and Joseph Sullivan

**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **EVELYN CINTRON,** | : | |
| **Plaintiff,** | : | **CIVIL ACTION** |
| | : | |
| **v.** | : | |
| | : | **NO. 19-4078** |
| **CITY OF PHILADELPHIA, et al.,** | : | |
| **Defendants.** | : | |
| | : | |

**MEMORANDUM OF LAW ON BEHALF OF DEFENDANTS THE CITY OF
PHILADELPHIA AND JOSEPH SULLIVAN
IN SUPPORT OF THEIR MOTION FOR SUMMARY JUDGMENT**

**I.      INTRODUCTION**

Plaintiff is a former Philadelphia Police Department ("PPD") lieutenant who alleges that

the City of Philadelphia and Joseph Sullivan engaged in a practice of discrimination and

retaliation against her on the basis of her race, sex, and/or national origin. Plaintiff is bringing

claims for discrimination and retaliation under Title VII and the Pennsylvania Human Relations

Act ("PHRA") on the basis of her sex, gender, and/or national origin. Plaintiff also brings claims

of retaliation under Title VII and the PHRA, as well as claims of First Amendment retaliation

and failure to train and supervise against the City of Philadelphia and Joseph Sullivan. She also

asserts that the City of Philadelphia discriminated and retaliated against her, and permitted

Joseph Sullivan to do the same, when it failed to train, supervise and discipline him. She asserts

that this discriminatory and retaliatory conduct occurred while she was serving as the

Commanding Officer of PAL ("Police Athletic League").

Plaintiff worked for PPD from June 20, 1999 until she retired from the department on January 31, 2019. She was appointed to the position of PAL Commanding Officer on June 20, 2016, and held this position until she retired on January 31, 2019. Plaintiff asserts that during this time she made multiple complaints about discrimination and that she experienced because of these complaints.

Plaintiff's allegations of discrimination are sweeping, vague, often focused on the conduct of PAL and its employees—not City employees—and are unsupported by the record evidence. Plaintiff asserts that in her first week as the PAL Commanding Officer, she made complaints about the conditions at PAL facilities. More specifically, Plaintiff asserts that she complained to Deputy Commissioner Myron Patterson, her direct supervisor at the time, that the conditions at the Wissinoming PAL Center were poor. This center, which was leased and maintained by PAL and was not owned or maintained by the City of Philadelphia, was, in fact, shut down.

Plaintiff also asserts that throughout her tenure as the PAL Commanding Officer she made complaints about disparities in funding and programming between white and minority children at PAL centers. These assertions are vague and lack specificity as to when, how, and to whom she made these complaints. PAL funding and programming is managed by the PAL Board of Directors, not the City of Philadelphia. In sum, any complaints of discrimination that Plaintiff may have made were made about an entity outside of the City's control and concerned actions the entity was taking with its own money and facilities.

Furthermore, Plaintiff did not suffer an adverse employment action. She started a one-year leave of absence on January 31, 2018 and retired on January 31, 2019. Plaintiff admits that she was never disciplined, transferred, fired, or otherwise retaliated against for any complaints

she made, however vague and undocumented they may have been. Not once during Plaintiff's tenure at the City of Philadelphia, did she make concrete claims of discrimination on the basis of her race, sex, and/or national origin. It wasn't until Plaintiff filed a complaint with the Equal Employment Opportunity Commission on May 22, 2019, more than one year after her last day working at PPD, that she first alleged she suffered discrimination based on her gender and national origin and retaliation.

After the EEOC issued a Dismissal and Notice of Rights letter to Plaintiff on June 10, 2019, Plaintiff filed a complaint with this court on September 6, 2019, and an Amended Complaint on September 1, 2021. Despite having more than five years to collect evidence to establish her claims the Police Department's policies and practices of allowing supervisors such as Deputy Commissioner Sullivan to discriminate and retaliate against employees such as Lt. Cintron for reporting unequal treatment, Plaintiff has not adduced any evidence from which a reasonable jury could conclude that she suffered discrimination or retaliation from the City Defendants or that they are otherwise liable to her.

Plaintiffs fails to establish a *prima facie* case of Title VII discrimination and City because she did not suffer an adverse employment action. Plaintiff also fails to establish a *prima facie* case of Title VII retaliation against the City because she did not engage in protected activity. Plaintiff alleges that she made verbal informal complaints at unspecified times on a number of issues. Even if the Court is inclined to accept these allegations as true, despite her threadbare assertions and lack of any supporting evidence, many of them would not qualify for protection because they do not relate to discrimination in any way (i.e. general complaints about people being mean to her or facilities being in poor condition). To the extent that she *did* make complaints about PAL's inequitable and allegedly racist allocation of its resources, this speech is

not protected under Title VII because these allegedly racist actions were not taken by the City of Philadelphia or its employees. The record clearly establishes that PAL, a separate legal entity from the City, has sole control over the issues raised by Plaintiff.

Plaintiff also fails to establish a claim of First Amendment retaliation because she did not speak as a private citizen. Furthermore, even if the court were to find that she spoke as a private citizen on a matter of public concern, she has not suffered an adverse employment action. Finally, Plaintiff's claims of discrimination pursuant To 42 U.S.C. § 1983 and the Fourteenth Amendment fail because she cannot establish that Joseph Sullivan deprived her of a constitutional right, identified a policy, custom or practice that caused a constitutional violation, or c adduced evidence that a particular City of Philadelphia training procedure caused a constitutional violation. As such, Joseph Sullivan is entitled to qualified immunity.

As such, the City Defendants respectfully request that the court grant them summary judgment and dismiss all claims against them.

## II.    PROCEDURAL HISTORY

Plaintiff filed her Complaint on September 6, 2019, against the City of Philadelphia, Joseph Sullivan and the Police Athletic League. Doc #1. On May 19, 2020, all Defendants filed Motions to Dismiss the Complaint. Doc #6 and #15. In one memorandum, the court decided both motions, granting each in part and denying them in part. Doc #19.

The Court denied City Defendants' motion with respect to Count IV, Plaintiff's First Amendment claim under 42 § 1983. Doc #19, pp. 6-8. The court granted City Defendant's motion on parts of Plaintiff's Monell claim set forth in Count IV – dismissing all but the failure to train claim. *Id.* at 8-11. The court denied the motion to dismiss with respect to Court III, Plaintiff's claim under Title VII that she was retaliated for her complaints of race discrimination. *Id.* at 11-13. The

court also dismissed Counts I, II and V. *Id.* at 16, fn. 8. The court permitted Plaintiff to amend her complaint. Plaintiff did not amend the Complaint, and City Defendants filed an Answer to it (Doc #1), based on the Court's rulings on their Motion to Dismiss, with Affirmative Defenses on August 7, 2020. Doc #23.

On September 13, 2021, Plaintiff filed an Amended Complaint. Doc #40. City Defendants filed an Answer to the Amended Complaint on October 18, 2021. Doc #43.

Pursuant to the Court's Seventeenth Scheduling Order, discovery closed on November 15, 2024. Doc #75. The matter is now ripe for summary judgment.

## III.    STATEMENT OF UNDISPUTED MATERIAL FACTS[1]

City Defendants incorporate their Statement of Undisputed Material Facts filed simultaneously with this Motion.

## IV.    SUMMARY JUDGMENT STANDARD

The "underlying purpose of summary judgment is to avoid pointless trial in cases where it is unnecessary and would only cause delay and expense." *Walden v. Saint Gobain Corp.*, 323 F. Supp. 2d 637, 641 (E.D. Pa. 2004) (citing *Goodman v. Mead Johnson & Co.*, 534 F.2d 566, 573 (3d Cir. 1976). A party is entitled to summary judgment when "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the parties are entitled to summary judgment as a matter of law." Fed.R.Civ.P. 56(c)(2); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986); *Fed. Home Loan Mortg. Corp. v. Scottsdale Ins. Co.*, 316 F.3d 431, 443 (3d Cir. 2003).

---

[1] Defendants do not dispute the evidence described in its Statement of Undisputed Material Facts for the purposes of this summary judgment only. This evidence may be disputed by Defendants at trial.

An issue is "genuine" only if there is a sufficient evidentiary basis on which a reasonable jury could find for the non-moving party. *Anderson v. Liberty Lobby, Inc.*, 447 U.S. 242, 249 (1986). A factual dispute is "material" only if it might affect the outcome of the suit under governing law. *Id.* All inferences must be drawn, and all doubts resolved in favor of the non-moving party. *U.S. v. Diebold, Inc.*, 369 U.S. 654, 655 (1962); *Gans v. Mundy*, 762 F.2d 338, 341 (3d Cir. 1985).

On motion for summary judgment, the moving party bears the initial burden of identifying these portions of the record that it believes demonstrate the absence of material fact disputes. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). To defeat summary judgment, the non-moving party must respond with facts of record that contradict the facts identified by the moving party and may not rest on mere denials. *See id.* at 321, n.3; *First Natl. Bank of Pa. v. Lincoln Natl. Life Ins. Co.*, 824 F.2d 277, 282 (3d Cir. 1987).

The nonmoving party may not resist a properly filed motion for summary judgment by relying solely on the unsupported conclusory allegations contained in pleadings but rather must go beyond the pleadings and affidavits and designate specific facts showing that there is a genuine issue for trial. *Anderson*, 477 U.S. at 248. "[A] party opposing summary judgment must do more than just rest upon mere allegations, general denials, or vague statements." *Super Fresh Food Mkts., Inc. v. United Food & Commercial Workers Local Union 1776*, 249 F. Supp. 2d 546, 551 (E.D. Pa. 2003). In ruling on a defendant's motion for summary judgment, a mere scintilla of evidence in support of the plaintiff's position is insufficient. *Anderson*, 477 U.S. at 252. Enough evidence must exist such that a jury could reasonably find for the plaintiff. *Id.* The plaintiff cannot merely rely upon assertions or speculation. *Gans*, 762 F.2d at 341. If the evidence is merely colorable or is not sufficiently probative, summary judgment may be granted.

*Bouriez v. Carnegie Mellon Univ.*, 585 F.3d 765, 771 (3d Cir. 2009). Additionally, "the unverified representations of counsel in a brief are not a proper part of the record for consideration on a motion for summary judgment." *Prince v. Sun Shipbuilding & Dry Dock Corp.*, 86 F.R.D. 106, 107 (E.D. Pa. 1980).

Where a non-moving party bears the burden of proof at trial, the moving party's burden may be "'discharged by 'showing'...that there is an absence of evidence to support the nonmoving party's case.'" *Bouriez*, 585 F.3d at 771 (quoting *Celotex*, 477 U.S. at 325). If the moving party carries this burden, "the burden shifts to the non-moving party to point to sufficient cognizable evidence to create material issues of fact such that a reasonable jury could find in its favor." *Bouriez*, 585 F.3d at 771 (internal citation and quotation marks omitted).

## V.    LEGAL ARGUMENT

### A. DEFENDANTS THE CITY OF PHILADELPHIA AND DEPUTY COMMISSIONER JOSEPH SULLIVAN ARE ENTITLED TO SUMMARY JUDGMENT ON PLAINTIFF'S CLAIMS OF DISCRIMINATION BASED ON NATIONAL ORIGIN AND GENDER BECAUSE PLAINTIFF HAS FAILED TO ADDUCE EVIDENCE TO SUPPORT THESE CLAIMS.

This section of City Defendants' memorandum addresses Plaintiff's allegations of gender discrimination and discrimination based on national origin against both the City of Philadelphia and individual defendant Joseph Sullivan under both Title VII (Counts I & II) and the PHRA (Count V) as set forth in Amended Complaint, Doc. 40 at pp. 11-12; 14-15.[2]

Title VII makes it an "unlawful employment practice for an employer

> (1) to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment,

---

[2] This court determined during the motion to dismiss stage of the litigation that, based on the pleadings and briefings of the parties, Plaintiff's Title VII and PHRA claims were limited to disparate impact and disparate treatment claims and did not include a claim of hostile work environment. Doc #19. The court gave Plaintiff leave to amend her complaint, however, she did not remedy the deficiencies despite ample time and opportunity to do so. *See* Doc #40.

because of such individual's race, color, religion, sex, or national
origin; or

(2) to limit, segregate, or classify his employees or applicants for
employment in any way which would deprive or tend to deprive
any individual of employment opportunities or otherwise adversely
affect his status as an employee, because of such individual's race,
color, religion, sex, or national origin.

42 U.S.C. § 2000e–2(a). "Title VII makes it unlawful to discriminate against a woman based on

her gender." *Nardella v. Phila. Gas Works, et al.*, 997 F. Supp. 2d 286, 293 (E.D. Pa. 2014)

(quoting *Johnston v. City of Phila.*, 863 F. Supp. 231, 233 (E.D. Pa. 1994)).

Plaintiff admits that she never experienced any explicit instances of gender discrimination

or discrimination based on her national origin that affected her terms and conditions of

employment. *See* Ex. 13, Cintron Dep. 1, 10/28/2022, at 137:3-12.  Therefore, Plaintiff must

demonstrate that (1) she is a member of a protected class, (2) she was qualified for the position,

(3) she suffered an adverse employment action, and (4) the action occurred under circumstances

that could give rise to an inference of intentional discrimination. *Jones v. Sch. Dist. of Phila.*, 198

F.3d 403, 410-11 (3d Cir. 1999).

### 1. Plaintiff Fails to Allege a *Prima Facie* Case of Sex and National Origin Discrimination Against the City because Plaintiff Has Not Suffered an Adverse Employment Action.

[3]Plaintiff is unable to establish that she suffered adverse employment action under

circumstances that could give rise to an inference of intentional discrimination because she was

not disciplined, transferred, or otherwise treated worse by her employer for any reason, much

---

[3] For the purposes of this motion only, Defendants City and Sullivan do not dispute the first two elements—that
Plaintiff is a member of protected class and qualified for the position she held—of her discrimination claims. These
elements may be disputed at trial.

less because of her gender or nationality. As such, she cannot establish a *prima facie* case of discrimination and thus a violation of Title VII[4] and the PHRA.

An adverse action need not be "significant…or serious, or substantial, or any similar adjective suggesting that the disadvantage to the to the employee must exceed a heightened bar." *Muldrow v. City of St. Louis, Missouri*, 601 U.S. 346, 355 (2024). Plaintiff must show that there was "some injury respecting her employment term or conditions… that left her worse off." *Id.* at 359. "[I]n other words, that the employer treated the employee 'worse' because of a protected characteristic." *Gunter v. Drexel University*, No. 23-2451, 2024 WL 4680032, *9 (E.D. Pa. Nov. 5, 2024) (quoting *Peifer v. Bd. of Prob. & Parole*, 106 F.4th 270, 277 (3d Cir. 2024) (change in plaintiff's title that did not change her salary, benefits, job responsibilities or budget or otherwise demonstrate that the employer treated her "worse" was not an adverse employment action, however, a jury could find that removal of a department from her administrative management was an adverse action because she had fewer employees to supervise). Adverse action may include removing key accounts from a plaintiff who earns commissions. *See, e.g., Robinson v. Euro Motors*, No. 23-3561, 2024 WL 4394737, at *5 (E.D. Pa. Oct. 30, 2024) (citing *Smith v. Presidio Networked Sols., Inc.*, No. 22-736, 2024 WL 3203314, at *14 (E.D. Pa. June 26, 2024)). Transfers that result in a loss of overtime opportunities could be an adverse employment action. *See, e.g., Hall v. City of Phila.*, No. 23-1381, 2024 WL 3937564, at *5 (E.D. Pa. Aug. 6, 2024) (plaintiff's transfer from his job as a cement finisher to a warehouse worker limited his chances for overtime). An unpaid three-day suspension constitutes "'some harm' to a term or condition of employment." *Ayala v. Tasty Baking Company*, No. 22-3849, 2024 WL 3889089, at *6 (E.D. Pa. Aug. 21, 2024) (citing *Peifer*, 106 F.4th at 277; *Seeney v. Elwyn, Inc.*, 409 F. App'x 570, 574 (3d

---

[4] "Claims of employment discrimination brought under Title VII and the PHRA are analyzed coextensively." *Williams v. Carson Concrete Corp.*, Civil Action No. 20-5569, 2021 WL 1546455, at *3 (E.D. Pa. Apr. 20, 2021).

Cir. 2011)). A suspension with pay could constitute a materially adverse action. *See e.g., Russo*, 2024 WL 3738643, at *4 fn.3. A written disciplinary warning placed in a plaintiff's personnel file that inhibits the ability to find new employment would constitute adverse employment action. *See, e.g.*, *Leite v. School District of Phila.*, No. 22-0306, 2024 WL 3606319 at *8 (E.D. Pa. July 30, 2024).

Plaintiff has not established that she suffered any employment action that could arguably be considered adverse action. In fact, Plaintiff admits that she never experienced any explicit instances of discrimination that affected her terms and conditions of employment. *See* Ex. 13, Cintron Dep. 1, 10/28/2022, at 137:3-12. Moreover, any poor treatment she may have complained of was committed by members of non-profit PAL and not the City of Philadelphia. *See* Ex. 2 at City152, 155. As such, she is unable to demonstrate adverse action, thus she cannot establish a *prima facie* case of discrimination under Title VII and the PHRA. Therefore, Counts I, II[5] and V of the Amended Complaint should be dismissed.

### 2. Plaintiff's Title VII Claims Against Individual Defendant Joseph Sullivan Must Be Dismissed as Individual Employees Cannot be Liable Under the Statute.

Although not identified in the caption of Plaintiff's Count II of the Amended Complaint, Count II appears to include a claim against individual defendant Joseph Sullivan under Title VII. *See* Doc. 40 at page 12. However, Count II against Sullivan must be dismissed because individual employees cannot be liable under Title VII.

As discussed above, Title VII makes it an "unlawful employment practice for an

**employer**

> (1)  to fail or refuse to hire or to discharge any individual, or
> otherwise to discriminate against any individual with respect to his

---

[5] Count II is redundant to Count I with respect to the claims against the City of Philadelphia.

compensation, terms, conditions, or privileges of employment,
because of such individual's race, color, religion, sex, or national
origin…

42 U.S.C. § 2000e–2(a) (emphasis added). The statute defines "employer" as "a person engaged

in an industry affecting commerce who has fifteen or more employees…and any agent of such a

person." 42 U.S.C. § 2000e(b).

Regardless, the law in this Circuit is clear that "individual employees cannot be liable

under Title VII." *Sheridan v. E.I. DuPont de Nemours and Co.*, 100 F.3d 1061, 1077 (3d Cir.

1996) ("Congress did not intend to hold individual employees liable under Title VII."); *see*

*Kachmar v. SunGard Data Sys., Inc.*, 109 F.3d 173, 184 (3d Cir. 1997) ("[T]his court in an *en*

*banc* decision, joined the majority of other circuits in concluding 'that Congress did not intent to

hold individual employees liable under Title VII.'" (quoting *Sheridan*, 100 F.3d at 1077)).

As a matter of law, Defendant Sullivan may not be liable under Title VII. As such, Count

II must be dismissed as to Defendant Sullivan.

## B. DEFENDANTS THE CITY OF PHILADELPHIA AND DEPUTY COMMISSIONER SULLIVAN ARE ENTITLED TO SUMMARY JUDGMENT ON PLAINTIFF'S CLAIMS OF RETALIATION UNDER TITLE VII AND THE PHRA.

This section of City Defendants' memorandum addresses Plaintiff's allegations of

retaliation against the City of Philadelphia and individual defendant Joseph Sullivan under Title

VII and the PHRA as set forth in Counts III and VI respectively of the Amended Complaint,

Doc. 40 at pp. 12-13; 15-16.

### 1.  Plaintiff Cannot Establish a Prima Facie Case of Retaliation.

Plaintiff cannot establish a prima facie case of retaliation against the City of Philadelphia or Joseph Sullivan because she did not engage in protected activity, nor did she suffer an adverse employment action.

To establish a *prima facie* case of Title VII retaliation, Plaintiff must demonstrate that (1) she engaged in protected employee activity; (2) she suffered an adverse employment action by the employer either after or contemporaneous with the employee's protected activity; and (3) there was a causal nexus between the plaintiff's protected activity and the defendant's adverse action. *Moore v. City of Phila.*, 461 F.3d 331, 340-41 (3d Cir. 2006) (quoting *Nelson v. Upsala College*, 51 F.3d 383, 386 (3d Cir. 1995)). To determine whether protected activity and retaliatory conduct are causally connected, a court may analyze "the temporal proximity between the two if 'unusually suggestive,'" or in the alternative, "the circumstances as a whole, including any intervening antagonism by the employer, inconsistencies in the reasons the employer gives for its adverse action, and any other evidence suggesting that the employer has a retaliatory animus when taking the adverse action." *Daniels*, 776 F.3d at 196 (quoting *LeBoon v. Lancaster Jewish Cmty. Ctr. Ass'n.*, 503 F.3d 217, 232 (3d Cir. 2007)).

### a.  Plaintiff has not adduced evidence that she engaged in protected activity.

Plaintiff's complaints about discriminatory conduct by PAL's Board and her treatment by PAL employees are not protected activity under Title VII. The anti-retaliation provision of Title VII, section 704(a) protects employees "who participate in certain Title VII proceedings (the "participation clause") and [employees] who oppose discrimination made unlawful by Title VII (the "opposition clause")." *Moore*, 461 F.3d at 341 (citing *Slagle v. County of Clarion*, 435 F.3d 262, 266 (3d Cir. 2006)). "Opposition conduct occurs when an employee 'oppose[s] any practice

made an unlawful employment practice by Title VII, and participation conduct occurs when an employee 'has made a charge, testified, assisted, or participated in any matter in an investigation, proceeding, or hearing' under Title VII." *Johnson v. School District of Philadelphia*, No. 2024 WL 1773358, at *7 (E.D. Pa. Apr. 24, 2024) (quoting *Slagle*, 435 F.3d at 165). "[P]rotected 'opposition' activity includes not only an employee's filing of formal charges of discrimination against an employer but also 'informal protected of discriminatory employment practices, including making complaints to management.'" *Curay-Cramer v. Ursuline Acad. Of Wilmington, Del., Inc.*, 450 F.3d 130, 135 (3d Cir. 2006) (quoting *Sumner v. U.S. Postal Serv.*, 899 F.2d 203, 209 (2d Cir. 1990)). ("Despite the wide net cast by *Sumner*, we are not aware of any court that has found public protests or expressions of belief to be protected conduct absent some perceptible connection to the employer's alleged illegal employment practice."). "A complaint amounts to 'protected employee activity' only if it 'identifies the **employer** and the practice – if not specifically, at least by context." *Id.*; *see Barber v. CSX Distrib. Servs.*, 68 F.3d 694 (3d Cir. 1995) (complaint about being passed over for a promotion is not protected employee activity); *Sanchez v. SunGard Availability Servs. LP*, 362 F. App'x 283 (3d Cir. 2010) (complaint about being "discriminated against, harassed, and bullied" is too vague to constitute protected activity); *Curay-Cramer*, at 135 (complaint that plaintiff's responsibilities had been decreased did not explicitly alleged that a protected characterize as the bases for that adverse action).

> **i.    Plaintiff's Complaints about PAL's Actions Are Not Protected Under Title VII Because PAL Was Not Her Employer**

To the extent that Plaintiff's complaints about the conditions of PAL facilities and PAL funding could be considered opposition activity, her claim fails because she was opposing the actions of a third party and not her own employer. The opposition speech protection concept in

Title VII protects employees from speaking out about discriminatory practices by *their own* employer. When determining whether an entity is an "employer" for purposes of Title VII, courts consider the factors articulated in *Nationwide Mutual Insurance Co. v. Darden,* 503 U.S. 318, 323–24 (1992). Courts applying *Darden* may focus on three indicia of control: (1) which entity paid plaintiff; (2) who hired and fired plaintiff; and (3) who "had control over [plaintiff's] daily employment activities." *Plaso v. IJKG, LLC*, 553 F. App'x 199, 203–04 (3d Cir. 2014) (citing *Covington v. Int'l Ass'n of Approved Basketball Officials,* 710 F.3d 114, 119 (3d Cir.2013) (internal citations quotations omitted)).

Here, Plaintiff's only complaints of potential discrimination were made concerning PAL's funding practices and the actions of its civilian employees. The record is clear: Plaintiff was not employed by PAL and PAL employees were not employed by the City of Philadelphia. PAL civilian employees report to the PAL executive director, who in turn reports to the PAL Board. *See* Ex. 17, Castellano Dep., 11/15/2024, at 12:16-18, 49:9-20. Furthermore, Plaintiff was not making complaints about PAL's employment practices. When Plaintiff expressed concerns about potentially discriminatory allocation of funds and programming at PAL Centers, she was reporting her concerns about a third-party's actions to the City of Philadelphia. In sum, Plaintiff's complaints about allegedly discriminatory practices at PAL are not protected under Title VII, and her for Title VII retaliation fails.

        **ii.**      **Plaintiff's Complaints to Joseph Sullivan About Her Treatment By PAL Employees Are Not Protected Activity Under Title VII Because She Never Communicated Unfavorable Treatment on the Basis of Her Sex or National Origin.**

Plaintiff did not make any complaints to the City of Philadelphia for allegedly discriminatory conduct on the part of the City or its employees. She never communicated unfavorable treatment on the basis of her sex or national origin. Plaintiff admits that she did not

raise any formal complaints concerning D/C Sullivan or against the City of Philadelphia. *See* Ex. 14, Cintron Dep. 2, 2/14/2023, at 135:9-11; 137:10-18. Plaintiff alleges that she complained to D/C Sullivan about conditions at PAL, poor treatment from PAL employees and her unprofessional sergeants and he dismissed her concerns or isolated her. *See* Ex. 13, Cintron Dep. 1, 10/28/2022 at 159-162.

However, these reports are not protected activity as she never communicated to him, or anyone else at the City, that the alleged unfavorable treatment was on the basis of her sex or national origin. "A general complaint of unfair treatment does not translate into a charge of illegal [] discrimination." *Barber*, 68 F.3d at 702. Moreover, when provided with the opportunity to pursue an EEO complaint against PAL employees, Plaintiff admits she did not avail herself of this opportunity. When an IAD investigator provided her with the policy on reporting discrimination, a complaint form and an opportunity to provide him with further information about her complaint, she refused to do so. *See* Ex. 2, at City152, 155, and 31. Following the IAD investigation, Plaintiff continued to make complaints, but they were directed, once again, at PAL employees – Ted Qualli, Sunny Li and Chase Trimmer - and not employees of the City of Philadelphia. *See* Ex. 13.

Finally, Plaintiff never made complaints of discrimination or changes to the terms and conditions of her employment with the City of Philadelphia until **after she retired from the City**. It wasn't until after she retired from the City and filed a complaint with the PHRC and EEOC in 2019, that she added gender and national origin to her complaints about unequal funding at PAL centers and exclusions from meetings. **Plaintiff never raised her protected status as a basis for discrimination or retaliation while employed by the City of Philadelphia.** Plaintiff cannot rely upon her EEOC filing to satisfy the protected activity element

because it was filed after her employment, and along with it, any possibility of retaliation, ended. *See Daniels*, 776 F.3d at 196 (rejecting retaliation claim based on purported adverse employment action that "preceded [plaintiff's] first protected activity").

### b. Plaintiff Has Not Suffered an Adverse Action.

Even if Plaintiff manages to demonstrate that she engaged in protected activity, she has not adduced evidence that she suffered adverse action, such that "a reasonable employee would have found the challenged action materially adverse which means it well might have "dissuaded a reasonable worker from making or supporting a charge of discrimination." *Daniels,* 776 F.3d at 195 (quoting *Burlington N.,* 548 U.S. at 68) (internal citations omitted). "[P]etty slights, minor annoyances, and simple lack of good manners will not create such deterrence;" rather, retaliation is actionable only where it produces material injury or harm sufficient to deter opposition to or reporting of discriminatory employment practices. *Burlington N.,* 548 U.S. at 67–68.

Plaintiff has not adduced any such evidence demonstrating that she was subject to adverse action because she was not disciplined, transferred, lost opportunities for overtime or other pay after engaging in protected activity. In fact, Plaintiff herself *admits* that she was not disciplined for making complaints to D/C Sullivan. *See* Ex. 14, Cintron Dep. 2, 2/14/2023, at 42:11-13. Plaintiff was not dismissed from employment and retired from City employment in 2019. *See* Ex. 1, at City333; Ex. 2, at City30. Plaintiff has not adduced any evidence that she suffered an adverse employment action, and therefore her claim for Title VII retaliation fails.

### 2. Plaintiff Cannot Maintain a Title VII Claim Against Deputy Commissioner Sullivan

Although not identified in the caption of Plaintiff's Count III of the Amended Complaint, Count III appears to include a claim against individual defendant Joseph Sullivan under Title VII

for retaliation. *See* Doc. 40 at pages 12-13. However, for the same reason that Count II

discrimination against Sullivan must be dismissed, Count III against Deputy Commissioner

Sullivan must also be dismissed –individual employees cannot be liable under Title VII. *See* 42

U.S.C. § 2000e–2(a). As a matter of law, Defendant Sullivan may not be liable under Title VII.

As such, Count III must be dismissed as to Defendant Sullivan.

## C. THE CITY DEFENDANTS ARE ENTITLED TO SUMMARY JUDGMENT ON PLAINTIFF'S FIRST AMENDMENT RETALIATION CLAIM UNDER 42 U.S.C. § 1983 BECAUSE PLAINTIFF WAS NOT SPEAKING AS A PRIVATE CITIZEN ON A MATTER OF PUBLIC CONCERN WHEN REPORTING INCIDENTS OF RACE DISCRIMINATION TO HER SUPERVISOR AND BECAUSE DEFENDANT SULLIVAN IS ENTITLED TO QUALIFIED IMMUNITY.

Defendants City of Philadelphia and Joseph Sullivan are entitled to summary judgment

on Plaintiff's First Amendment Retaliation Claim under 42 U.S.C. § 1983 because Plaintiff has

not adduced any evidence that the City or Joseph Sullivan deprived her of her constitutional

rights. Plaintiff alleges that the City of Philadelphia "acted under color of law, and with

deliberate indifference to the Plaintiff['s] rights to be free from retaliatory conduct by Defendant

Sullivan, by failing to adequately train, supervise and instruct [him] in the illegality and

impropriety of retaliating against employees for reporting incidents of race and employment

discrimination." *See* Doc #40 Amended Complaint, Count IV, ¶ 81. Defendants interpret this

Count to include claims made pursuant to 42 U.S.C § 1983 and against (1) Defendant Sullivan

for engaging in retaliation under the First Amendment; (2) Defendant Sullivan for violating her

Fourteenth Amendment right to equal protection and (3) the City of Philadelphia for violating the

standard set forth in *Monell* by failing to train or supervise Sullivan not to retaliate or

discriminate; because its policy, custom, or practice caused the constitutional violation and

because it is strictly liable for Sullivan's acts.

### 1. City Defendants are Entitled to Summary Judgment on Plaintiff's Claim First Amendment Retaliation Because She Cannot Satisfy the Elements Sufficient to Establish a Claim.

Plaintiff has failed to establish as a matter of law that City Defendants deprived her of any rights under the First Amendment. "[T]he State has interests as an employer in regulating the speech of its employees that differ significantly from those it possesses in connection with regulation of the speech of the citizenry in general." *Pickering v. Board of Education*, 391 U.S. 563, 568 (1968). In order for Plaintiff, a former public employee, to state a claim of First Amendment retaliation, she "must show that (1) [her activity] is protected by the First Amendment and (2) the [activity] was a substantial or motivating factor in the alleged retaliatory action, which, if both are proved, shifts the burden to the employer to prove that (3) the same action would have been taken even if the [activity] had not occurred." *Munroe v. Central Bucks Sch. Distr.*, 805 F.3d 454, 466 (3d Cir. 2015) (quoting *Dougherty v. Sch. Dist. of Phila.*, 772 F.3d 979, 986 (3d Cir. 2014)).

To show that their speech is protected by the First Amendment, an employee-plaintiff must prove three things: (1) that they spoke "as a private citizen;" (2) on "a matter of public concern," *Garcetti v. Ceballos*, 547 U.S. 410, 418 (2006); and, (3) that the employee and the public's collective interest in the employee's speech outweighs the government's interest in avoiding disruption to its operations that could be or was caused by that speech. *Pickering v. Bd. of Educ.*, 391 U.S. 563, 568 (1968); *see also Fenico*, 70 F.4th at 162-63 (labelling the third factor "*Pickering* balancing"). These three elements are all questions of law, albeit ones "that nonetheless require[] a robust factual basis" to evaluate. *See Fenico v. City of Philadelphia*, 70 F.4th 151, 166 (3d Cir. 2023).

### 2. Plaintiff did not speak as a citizen on a matter of public concern.

Plaintiff's complaints about the conditions at PAL centers and concerns about disparities in funding and programming at PAL are not protected by the First Amendment because they were made in her capacity as the PAL Commanding Officer and not as a private citizen. "Where a public employee claims First Amendment retaliation by a government employer, the plaintiff-employee must demonstrate that [s]he 'spoke as a citizen on a matter of public concern for [her] activity to be protected by the First Amendment.'" *Alers v. City of Phila.*, 919 F. Supp. 2d 528, 553 (E.D. Pa. 2013) (quoting *Borough of Duryea, Pa. v. Guarnieri*, 564 U.S. 379, 386 (2011)).

"[P]ersonal grievances, complaints about conditions of employment, or expressions about other matters of personal interest ... are matters more immediately concerned with the self-interest of the speaker as employee." *Dondero v. Lower Milford Township*, 431 F. Supp. 3d 590, 602 (E.D. Pa. 2019) (quoting *Palardy v. Township of Millburn*, 906 F.3d 76, 83 (3d Cir. 2018)). "Whether an employee's speech involves public concern is determined by reference to the speech's 'content, form, and context.'" *Lane v. Franks*, 573 U.S. 228, 241 (2014) (quoting *Connick*, 461 U.S. 138, 147-48 (1983)). "Police misconduct is generally a matter of public concern, but for a public employee's anti-retaliation speech regarding police misconduct to fall under the protective umbrella of the First Amendment, such speech must be made 'as a citizen.'" *Alers*, 919 F. Supp. 2d at 554 (quoting *Kline v. Valentic*, 283 F. App'x. 913, 916-17 (3d Cir. 2008)) (court determined that plaintiff police officer who claimed he was not promoted for protesting an internal affairs investigation spoke not "as a citizen" but as a police officer because his reputation and career were at stake, he had not complained in any public forum, and his actions in no way indicated that he desired the public know about his complaints).

Here, Plaintiff vaguely alleges that she reported "incidents of race and employment discrimination" to Sullivan who retaliated against her. Amended Complaint, ¶81. When deposed,

Plaintiff was unable to identify any complaints she made to D/C Sullivan about race and employment discrimination. Her complaints to D/C Sullivan, or anyone at the Police Department, were limited to the following complaints about PAL and its employees:

- In 2016 or 2017, Plaintiff reported to her then-direct supervisor Deputy Commissioner Patterson that the Wissinoming PAL Center contained mold that caused her to vomit, and he allegedly agreed that it should be closed until it was "properly fixed" for the safety of the children and staff. *See* Ex. 13, Cintron Dep. 1, 10/28/2022, at 95:20-25, 96:2-3.

- A January 19, 2018 memorandum with the subject, "Incident with Ted Qualli," that she sent to D/C Sullivan on January 19, 2018. *See* Ex. 3. In this memo Plaintiff identified **complaints by PAL employees against PAL employees** Sunny Li and Chase Trimmer; alleged that Qualli berated her during a meeting and demanded to speak to her subordinate officers. *Id.* Plaintiff noted in the memo that "since Ted began his employment with PAL he had the same problems with the last two Commanders with me being the third," indicating that his issues were not specific to Plaintiff. *Id.*

Even if the report of the conditions of the Wissinoming PAL Center constitutes a complaint, Plaintiff admits that as part of her duties as a police officer and commanding officer of PAL she was responsible for the safety of the officers and the community. *See* Ex. 13, Cintron Dep. 1, 10/28/2022, at 96:20-23. PPD Directive 97 further provides that "[s]upervisors are not only accountable for themselves, but also for the conduct and/or actions of their subordinates and non-employees present in the workplace . . . ." Therefore, any concerns that Plaintiff may have raised about the conditions at PAL and/or the behavioral of PAL employees were squarely within

her job duties and description, and not complaints she made as a citizen. Based on the lack of

evidence to support her claim that she spoke as a citizen on a matter of public concern, City

Defendants are entitled to summary judgment on this claim.

### 3. Plaintiff did not suffer suffered any adverse employment action.

However, if the court were to find Plaintiff's speech should be afforded First Amendment

protection (satisfying the first element of a First Amendment Retaliation claim), this claim must

still be dismissed because Plaintiff has not suffered retaliatory conduct by the City Defendants. If

a Plaintiff demonstrates that she spoke as a citizen on matters of public concern and her interest in

making that speech outweighs the government's interest in avoiding disruption caused by it, she

must also show that "the retaliatory conduct would deter a person of ordinary firmness from

exercising her First Amendment rights." *Alers*, 919 F. Supp. 2d at 554. "Retaliatory actions that

violate an employee's First Amendment rights may be adverse where they relate to 'promotion,

transfer, recall and hiring,' not where they are simply 'criticism, false accusations, or verbal

reprimands.'" *Id.* (quoting *Brennan v. Norton*, 350 F.3d 399, 419 (3d Cir. 2003)). Plaintiff must

show that the retaliatory conduct was more than *de minimis*. *Alers*, 919 F. Supp. 2d at 554 (citing

*Smith v. Cent. Dauphin Sch. Dist.*, 355 F. App'x 658, 668 (3d Cir. 2009)).

Plaintiff cannot establish that she suffered any adverse employment action or any conduct

that would deter a person of ordinary firmness from exercising their First Amendment Rights.

There is no evidence that she was disciplined, transferred, demoted, passed over for promotion

during her period of employment as a lieutenant assigned to PAL. *See* Ex. 14, Cintron Dep. 2,

2/14/2023, at 42:11-13. (Plaintiff admits that she was not disciplined for making complaints). For

this reason, the City Defendants are entitled to summary judgment.

**4. There is no evidence of causation between Plaintiff's alleged protected speech and retaliatory action by Sullivan.**

In the event the court finds that Plaintiff has established that plaintiff engaged in protected and activity and that it had an adverse effect on the terms of her employment, she is required to show that her protected speech was a substantial or motivating factor in the alleged conduct. *Id.* at 555. To do this, she "must show 'either (1) an unusually suggestive temporal proximity between the protected activity and the allegedly retaliatory action, or (2) a pattern of antagonism coupled with timing to establish a causal link.'" *Alers*, at 555 (quoting *Lauren W. (ex rel. Jean W.) v. DeFlaminis*, 480 F.3d 259, 267 (3d Cir. 2007)).

In *Alers*, plaintiffs were police officers who filed complaints reporting alleged police misconduct then claimed the complaints were protected by the First Amendment. The court determined that Alers' complaint to his captain and EEOC about the harassment he faced involved his own terms and conditions of employment, he did not air the complaints in a public forum and his actions in no way indicated that he wanted the public to know about his complaints. *Alers*, at 555. "Even if Alers spoke as a citizen on a matter of public concern … Alers did not suffer adverse retaliation" as he was not disciplined for violating departmental rules and "did not face adverse retaliation sufficient to deter a person of ordinary firmness from exercising his constitutional rights." *Id.*

Here, Plaintiff cannot establish causation because she was not disciplined for her speech, nor did she face any adverse employment action sufficient to deter someone of ordinary firmness from expressing her constitutional rights. Plaintiff, by her own admission, has not be disciplined, transferred, or fired by the City of Philadelphia. *See* Ex. 14, Cintron Dep. 2, 2/14/2023, at 42:11-13. She has not established any facts sufficient to show that she suffered any adverse action whatsoever due to complaints she made about PAL. Furthermore, Plaintiff has not adduced any

facts sufficient to demonstrate that she suffered any retaliation for making complaints about PAL centers or racial disparities in PAL funding. Feeling mistreated by PAL employees (who are not employed by the City of Philadelphia) is insufficient to demonstrate that the City of Philadelphia engaged in any retaliation or other adverse action in response to her voicing her concerns. Therefore, Plaintiff has not established causation and her claim for First Amendment retaliation fails.

### 5.  Deputy Commissioner Sulivan is entitled to Qualified Immunity on Plaintiff's First Amendment claim.

Defendant Sullivan cannot be held liable for violations of the First Amendment asserted by Plaintiff based on the affirmative defense of qualified immunity. *Bradley v. West Chester*, 226 F. Supp.3d 435, 440-41 (E.D. Pa. 2017) (citing *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)).

Plaintiff can only overcome an affirmative defense of qualified immunity by showing that an official's conduct "violated a constitutional right which right was clearly established at the time of the alleged violation." *Bradley*, 226 F. Supp.3d at 441. "To determine if a right is 'clearly established' the court must 'define the right allegedly violated at the appropriate level of specificity,' an inquiry which can include finding that 'a general constitutional rule already identified in the decisional law applies with obvious clarity.'" *Id.* at 448 (quoting *Sharp v. Johnson*, 669 F.3d 144, 159 (3d Cir. 2012)). In other words, 'the very action in question' need not have been found previously unlawful, but 'in the light of pre-existing law, the unlawfulness must be apparent.'" *Bradley*, at 448-49 (quoting *Anderson v. Creighton*, 483 U.S. 635, 640 (1987)) (internal citations omitted). "'[A] case directly on point' is not required to render a right 'clearly established' and that instead, 'existing precedent must have place the …constitutional question beyond debate.'" *Bradley,* at 449 (quoting *Ashcroft v. al-Kidd*, 563 U.S. 731, 741 (2011)).

With respect to Plaintiff's First Amendment Claim, she must show that a reasonable person in D/C Sullivan's shoes would have known that his conduct was unlawful. Because Plaintiff has not articulated any conduct by Sullivan **at all**, she certainly cannot satisfy this burden. As such, D/C Sullivan is entitled to qualified immunity.

**D. DEFENDANT CITY OF PHILADELPHIA AND JOSEPH SULLIVAN ARE ENTITLED TO SUMMARY JUDGMENT ON PLAINTIFF'S CLAIM OF DISCRIMINATION PURSUANT TO 42 U.S.C. § 1983 AND THE FOURTEENTH AMENDMENT BECAUSE PLAINTIFF CANNOT ESTABLISH A *PRIMA* FACIE CASE OF DISCRIMINATION AND BECAUSE HE IS ENTITLED TO QUALIFIED IMMUNITY.**

To establish a claim of discrimination under section 1983, Plaintiff must demonstrate a violation of a constitutionally-secured right committed by the defendants who acted under color of state law. *Alers*, 919 F. Supp. 2d at 556 (citing 42 U.S.C. § 1983; *Mosca v. Cole*, 217 F. App'x. 158, 163 (3d Cir. 2007)). Plaintiff has alleged that the defendants violated her rights under the Fourteenth Amendment which "prohibits the denial of equal protection of the law to any person 'which is essentially a direction that all persons similarly situated should be treated alike.'" *Id.* As such, Plaintiff must prove that the defendants, acting under color of state law, "treated the plaintiff differently from other individuals similarly situated and 'the different treatment was improperly motivated by discrimination.'" *Alers*, at 556 (quoting *Zappan v. Pa. Bd. of Prob. & Parole*, 152 F. App'x. 211, 219 (3d Cir. 2005)). **In the absence of direct evidence of discrimination, "§ 1983 discrimination claims are analyzed pursuant to the *McDonnell Douglas* burden-shifting framework."** *Alers*, at 556 (quoting *Moussa v. Pa. Dept. of Pub. Welfare*, 413 F. App'x 484, 486 (3d Cir. 2011)) (emphasis added).

As demonstrated *supra*, just as Plaintiff is unable to establish a *prima facie* case of discrimination under Title VII, her claims against City Defendant Sullivan under § 1983 fail. Additionally, D/C Sullivan is entitled to Qualified Immunity on Plaintiff's Fourteenth

Amendment claim because Plaintiff has not identified conduct that Sullivan engaged in that allegedly denied her equal protection rights, thus she cannot meet this burden. Plaintiff can only overcome an affirmative defense of qualified immunity by showing that an official's conduct "violated a constitutional right which right was clearly established at the time of the alleged violation." *Bradley v. West Chester*, 226 F. Supp.3d at 441. Here, Plaintiff cannot meet this burden because Plaintiff has not identified conduct that he engaged in that allegedly denied her equal protection rights.

### E.  PLAINTIFF CANNOT SUCCEED ON HER MONELL CLAIM AGAINST THE CITY OF PHILADELPHIA BECAUSE SHE IS UNABLE TO DEMONSTRATE MUNICIPAL LIABILITY.

The court has interpreted Plaintiff's theories of municipal liability as the City is strictly liable for Sullvan's actions; the City is liable for a failure to train or supervise Sullivan not to retaliate or discriminate; and the City is liable because its policy, custom, or practice caused the constitutional violation. Doc. #19 at 8. In its Order on Defendants' Motions to Dismiss, the Court dismissed two of Plaintiff's three theories of municipal liability, leaving only the failure to train argument. *Id.* at 8-11. To the extent the court determines that the City Defendants' Answer to the Amended Complaint served as a waiver of the defense to the other two theories, the City Defendants will address those theories in this Memorandum of Law.

To hold the City of Philadelphia liable under § 1983 for the conduct of its employees, Plaintiff has the burden to satisfy the standard established in *Monell*. *Dondero*, 431 F. Supp. 3d at 606 (citing *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 691 (1978)). The *Monell* standard "requires a plaintiff to establish '(1) she possessed a constitutional right of which she was deprived; (2) the municipality had a policy; (3) the policy amounted to deliberate indifference to the plaintiff's constitutional right; and (4) the policy was the moving force behind the

constitutional violation.'" *Dondero*, at 606 (quoting *Vargas v. City of Phila*, 783 F.3d 962, 974 (3d Cir. 2015)). "Deliberate indifference is a stringent standard of fault, requiring proof that a municipal actor disregarded a known or obvious consequence of its action." *Id.*

Additionally, because the Plaintiff has the burden of proof on a *Monell* claim, the City Defendants are not required "to produce evidence showing the absence of a genuine issue of material fact." *Gallashaw v. City of Phila.*, 774 F. Supp. 2d 713, 716 (E.D. Pa. 2011) (quoting *Celotex*, *supra*, 477 U.S. at 325); *see also Groman v. Twp. Of Manalpan*, 47 F.3d 628, 638 (3d Cir. 1995); *Losch v. Borough of Parkesburg*, 736 F.2d 903, 910 (3d Cir. 1984). Rather, the City Defendants may meet their burden by showing an absence of evidence to support Plaintiff's case. *Id.* Here, Plaintiff has not produced any evidence to show a causal link between a City policy and her alleged injuries. Therefore, she is unable to prevail on her *Monell* claim against the City.

### 1. Plaintiff Cannot Establish that Sullivan Deprived Her of a Constitutional Right.

As discussed above, Plaintiff has failed to establish a constitutional violation by City Defendant Sullivan. Because this is "a prerequisite to finding municipal liability," her claim of municipal liability must be dismissed. *Weston v. City of Phila.*, 82 F. Supp. 3d 637, 649 (E.D. Pa. 2015) (citing *City of Los Angeles v. Heller*, 475 U.S. 796, 799 (1986); *City of Canton, Ohio v. Harris*, 489 U.S. 378, 390 (1989); *Grazier ex rel. White v. City of Phila.*, 328 F.3d 120, 124 (3d Cir. 2003); *Mulholland v. Gov't Cnty. Of Berks, Pa.*, 706 F.3d 227, 238 n.15 (3d Cir. 2013) ("It is well-settled that, if there is no violation in the first place, there can be no derivative municipal claim.")) (internal citations omitted)). For this reason, Plaintiff cannot proceed with a *Monell* claim, and City Defendants are entitled to summary judgment.

### 2. Plaintiff Has Not Identified a Policy, Custom, or Practice That Caused a Constitutional Violation.

A municipality can be liable under § 1983 when "action pursuant to official municipal **policy** of some nature cause[s] a constitutional tort." *Gallashaw*, 774 F. Supp.2d at 716 (quoting *Monell*, 436 U.S. at 691) (emphasis added). "Traditional Monell liability arises when a city's official policy or custom proximately causes a constitutional deprivation." *Gallashaw*, 774 F. Supp. 2d at 717 (citing *Fletcher v. O'Donnell*, 867 F.2d 791, 793 (3d Cir. 1989)). "Custom … can be proven by showing that a given course of conduct, although not specifically endorsed or authorized by law, is so well-settled and permanent as virtually to constitute law." *Bielevicz v. Dubinon*, 915 F.2d 845, 850 (3d Cir. 1990). "A plaintiff must identify the challenged policy, attribute it to the city itself, and show a causal link between the execution of the policy and the injury suffered." *Losch*, 736 F.2d at 910.

A single incident is insufficient to establish either an official policy or a custom. *Fletcher*, 867 F.2d at 793; *see also Groman*, 47 F.3d at 637 (finding that a plaintiff could not survive summary judgment by making vague assertions about a police department's failure to investigate and coupling those assertions with proof of a single incident); *Losch*, 736 F.2d at 911 ("A policy cannot ordinarily be inferred from a single instance of illegality ....").

Here, Plaintiff has not identified any custom or policy, let alone established a link between such an alleged course of conduct that virtually constitutes law and an injury to Plaintiff. As such, the City Defendants are entitled to summary judgment on this theory of liability under *Monell*.

### 3. Plaintiff Has Not Adduced Evidence That a Particular City of Philadelphia Training Procedure Caused a Constitutional Violation

Plaintiff's vague allegation of a "failure to train" is insufficient to establish liability on the City of Philadelphia. She is required to show that "through deliberative conduct, [the City's]

'policy' or 'custom' was the driving force behind the harm." *Weston*, 82 F. Supp. 3d at 649

(quoting *Board of Cnty, Com'rs of Bryan Cnty., Okla. V. Brown*, 520 U.S. 397, 404 (1997))

(internal citations omitted). "To succeed on a failure to train claim, a plaintiff must show 'that in

light of the duties assigned to …employees the need for more or different training is so obvious,

and the inadequacy so likely to result in the violation of constitutional rights, that the

policymakers of the [municipality] can reasonably be said to have been deliberately indifferent to

the need." *Alexander v. Fair Acres Geriatric Center*, 678 F. Supp. 3d 639, 647 (E.D. Pa. 2023)

(quoting *Canton*, 489 U.S. at 390). Specifically, Plaintiff must show that "(1) municipal

policymakers know that employees will confront a particular situation; (2) the situation involves

a difficult choice or a history of employees mishandling; and (3) the wrong choice by an

employee will frequently cause deprivation of constitutional rights." *Coyett*, 150 F. Supp. 3d

479, 485-86 (quoting *Carter v. City of Phila.*, 181 F.3d 339, 357 (3d Cir. 1999)).

    "[A] district court "should impose liability only when 'the training <u>should</u> have been

more thorough or comprehensive,' not 'merely because municipal training <u>could</u> have been more

thorough or comprehensive.'" *Coyett*, 150 F. Supp. 3d at 485 (quoting *Berrios v. City of Phila.*,

96 F. Supp. 3d 523, 536 (E.D. Pa. 2015)). Employees typically need "a pattern of similar

constitutional violations by untrained municipal employees to demonstrate deliberate

indifference" in failure to train cases. *Connick v. Thompson*, 563 U.S. 51, 62 (2011).

    In *Fair Acres*, the court found that evidence that the defendant nursing home facility

received 19 deficiency citations from the Pennsylvania Department of Health and Human

Services relating to the training and supervision of its employees could lead a reasonable jury to

conclude there was a pattern of constitutional violations by untrained municipal employees to

demonstrate deliberate indifference. 678 F. Supp. 3d at 647. In *Coyett*, the court found a

reasonable jury could find a pattern of similar constitutional violations by untrained municipal officers that showed a deliberate indifference on the part of the City of Philadelphia for its failure to improve its use of force training after plaintiff presented evidence that for a six-year period, Philadelphia Police officers shot fifty-nine unarmed suspects, that while officers received training on use of force during initial training at the Police Academy, they weren't tested on it or provided with training after graduating from the Academy, that training wasn't specific to circumstances they faced or on the department's use of deadly force policy, and other deficiencies. 150 F. Supp. 3d at 487.

Here, Plaintiff has not adduced any evidence from which a reasonable jury could find a pattern of similar constitutional violations by untrained municipal employees that shows a deliberate indifference on the part of the City of Philadelphia for its failure to train, or improve its training, in a particular area. Nothing in the record indicates facts to support such a claim. As such, Plaintiff's *Monell* claim fails.

### 4. Plaintiff cannot show that the City is strictly liable for D/C Sullivan's actions.

There is no strict liability for the actions of a municipality stemming from the actions of its employees. The City of Philadelphia cannot be held liable under § 1983 on a *respondeat superior theory*. *Monell*, 436 U.S. at 691. This means that even if City Defendant Sullivan deprived Plaintiff of her constitutional rights, the City is not liable under § 1983 simply as his employer. *Gallashaw*, 774. F. Supp. 2d at 715. As such, her *Monell* claim based on this theory of liability must be dismissed.

## VI.    CONCLUSION

For the reasons set forth above, Defendants the City of Philadelphia and D/C Sullivan respectfully request that this Honorable Court grant their Motion for Summary Judgment and dismiss Plaintiff's Amended Complaint with prejudice.

## VII.    REQUEST FOR ORAL ARGUMENT

In the event that this Court is not inclined to grant summary judgment based solely on Defendants' motion and any response thereto, the City of Philadelphia and Joseph Sullivan respectfully request oral argument.

                                    **Respectfully Submitted,**
                                    CITY OF PHILADELPHIA LAW DEPARTMENT
                                    RENEE GARCIA, CITY SOLICITOR
                                    ANNE TAYLOR, CHAIR OF LITIGATION


DATED: January 24, 2025         BY:    */s/ Sharon E. Ulak*
                                    Sharon E. Ulak
                                    Divisional Deputy City Solicitor
                                    PA ID # 316198
                                    Law Department-Labor & Employment Unit
                                    1515 Arch Street, 15th Floor
                                    Philadelphia, PA 19102
                                    Attorney for Defendants
                                    City of Philadelphia and Joseph Sullivan

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on the date below, the foregoing Motion for Summary Judgment, Memorandum of Law, Statement of Undisputed Material Facts, proposed Order and Exhibits has been filed electronically and is available for viewing and downloading.

Respectfully Submitted

CITY OF PHILADELPHIA LAW DEPARTMENT

DATED: January 24, 2025        BY:    /s/ Sharon E. Ulak_____
Sharon E. Ulak
Divisional Deputy City Solicitor